Kirkpatrick *et al. v.* Alexander, Executor.

---

## KIRKPATRICK ET AL. *v.* ALEXANDER, EXECUTOR.

CONTRACT OF SALE.—*Delivery.—Time.—Pleading.—Notice.*—A complaint to recover damages for a failure to accept certain live-stock, contracted to be delivered during " the first half of August," etc., at a specified place, alleged the delivery of said live-stock, at such place, on the 16th day of August, before noon.

*Held,* on demurrer, that the fact that delivery had not been theretofore made was equivalent to notice that it would be made on that day.

*Held,* also, that such stock should have been kept at the place of delivery until noon of that day.

SAME.—A delivery of the live-stock, at such place, on such day, in the absence of the defendant, and a removal of the same by the plaintiff before noon, though to a place near at hand, was not a delivery binding the defendant.

PRACTICE.—*Trial Without Issue.— Waiver.—Supreme Court.*—In such case, the defendant, having filed an answer of general denial, withdrew the same and filed a demurrer to the complaint, which was overruled, whereupon, the general denial not having been re-filed, the parties went into trial on the issue formed by the complaint and a counter-claim then filed.

*Held,* that the plaintiff, having failed to object to such irregularity before going into trial, can not afterward, for the first time, in the Supreme Court, insist on judgment on the pleadings.

From the Rush Circuit Court.

*B. L. Smith, F. J. Hall, L. Sexton* and *C. Cambern,* for appellants.

*B. F. Claypool* and *G. B. Sleeth,* for appellee.

BIDDLE, C. J.—This case was once before considered by this court (*Kirkpatrick* v. *Alexander,* 44 Ind. 595), and the judgment reversed for the insufficiency of the complaint.

After the case was remanded, the complaint was amended, and a demurrer to the amended complaint for want of alleged facts overruled, and exceptions reserved.

Answer of general denial and counter-claim was filed.

Reply to counter-claim.

Trial by jury; verdict for appellee; and, over the usual motions and exceptions to prepare the case for this court, judgment was rendered on the verdict.

Appeal.

The copy of contract sued on will be found in the reported case above cited, and need not be again stated; nor need we state the amended complaint, but will notice the objections taken against it by the appellant. It does not aver any notice given by the appellee to the opposite party of the time he would deliver the hogs at "Mr. Gordon's scales." This omission, the appellant thinks, renders the complaint insufficient. It is argued, that, as Yazell had a right to deliver the hogs upon any day between the first and middle of August, the appellant could not know at what time he would deliver them, and was not bound to be there all the time continuously during the first half of August to receive them. This may be true, but the complaint avers, that the hogs were delivered at the scales on the 16th day of August, before noon of that day. Now, as the appellant had had no notice when the hogs would be delivered before that day, he must have known that the hogs would be delivered on that day, or they could not be delivered at all under the contract. We think these facts are equivalent to notice

Kirkpatrick *et al. v.* Alexander, Executor.

that Yazell had elected to deliver the hogs on that day. This view constrains us to hold the complaint sufficient.

The appellants claim that the evidence does not support the verdict, because it fails to show that the hogs were kept ready for delivery at "Mr. Gordon's scales" up to noon of the 16th day of August, 1871, so that the appellants could either receive or decline to receive them within the full time allowed by the contract. They insist, that, as the hogs were delivered on the 16th day of August, they had to the last moment before noon of that day to see whether they filled the contract or not, and to decide whether they would receive them or not. This legal proposition is correct, as there was no allegation that any notice had been given that the hogs would be delivered at any other time.

The evidence upon this disputed point is as follows:

Uriah Gordon testified: "I own scales on my farm; was no other Gordon who had scales near me. * * * the hogs were weighed between 8 and 9 o'clock on the 16th of August, 1871, in the forenoon. There is an open shed over the scales, and a lot fenced in; no water in the lot; was a tolerably warm day; was a little cloudy; did not rain any. After they were weighed we moved them away, between half after 10 and 12 o'clock. They did not lay there long. It was very warm; couldn't give any definite hour when we moved them away from scales, but think it was 10½ or 12 o'clock. The hogs were taken a little over a quarter of a mile from the scales to the farm, 10 or 12 rods over a quarter of a mile. The pen where we took them had running water in it. I went with them to help drive hogs back to the pen. The place where we drove the hogs can not be seen from the scales, on account of a hill between."

Cross-examination: "After the hogs were weighed, we took them back to same pen they were brought from in the morning. * * * The hogs left the scales be-

fore 12 o'clock on the 16th day of August; could not tell exactly how long, but one-half hour before 12 o'clock at least; my judgment is that it was a half hour before 12; think it was not as much as an hour before, but it might have been. The hogs were weighed between 8 and 9 o'clock."

James Yazell testified: "Son of plaintiff's intestate, James Yazell; know defendants. * * * Father and I and one of my brothers went to the scales early in the morning. We then drove hogs to scales and weighed them; about 9 o'clock when we weighed them; Gordon weighed them. John Spencer was there; he is now dead. The whole lot weighed 18,044 pounds. After they were weighed, they remained in the lot till about 11 o'clock, or between that and 12, when they were taken back to the pen. It is about one-fourth of a mile from scales to pen. Defendants were not present; did not see them that day; no one present who represented them as agent. Gordon went part of the way with us when we drove them back. Father and I remained at pen awhile, and then went back to scales and stayed there till 12 o'clock; we stayed there till after 12 o'clock. Defendants were not there, nor no one who represented them."

Cross-examination: "We stayed at pen some time after taking hogs back; didn't stay there long; suppose we were there 10 or 15 minutes. Was a warm day. We drove hogs back from scales slowly and carefully. Suppose we got back to scales 10 or 15 minutes before 12 o'clock. My brother went with us."

This evidence was introduced by the appellee, and is all that refers to the time the hogs were taken from the scales, after they were weighed. It not only fails to show that the hogs were kept at the scales until noon on the 16th day of August, 1871, but it clearly shows that they were not kept there until noon of that day. If they were "slowly and carefully" driven back from the scales to the pen, over a quarter of a mile away, after they were

weighed, as testified by young Yazell, and he and his father "remained at pen awhile, and then went back to scales" and arrived there "10 or 15 minutes before 12 o'clock," the hogs must have been taken away from the scales a considerable time before 12 o'clock. But we do not understand the appellee to contend that the hogs were actually at the scales until 12 o'clock of that day. He contends, however, that the hogs "were not to be on the scales, or within ten feet of them, but within such reasonable distance that, if demanded by appellants, they could, upon short notice, have been put upon the scales;" but we can not hold a delivery of the hogs in the pen where they were fatted, and where they probably were when the contract was made, July 9th, 1871, to be a delivery at the scales, more than a quarter of a mile away. The appellee also seems to lay much stress upon the fact that the appellants were not at the scales to receive the hogs upon the 16th day of August; but this would not excuse Yazell from performing his part of the agreement, if he desired to resort to his legal remedy; besides, the fact that the hogs had been taken away from the scales before 12 o'clock might have been the reason why the appellants did not appear at the scales to receive them.

The record shows, that, after the answer of general denial had been filed to the complaint, it was withdrawn, and a demurrer filed to the complaint; and that, after the demurrer had been overruled, a counter-claim was filed to the complaint. The record does not show that the general denial was ever re-filed, or that there was any other issue in the case than that formed by the complaint and counter-claim. The appellee argues, therefore, that the allegations in the complaint were admitted because they were not denied; and, if the complaint is sufficient, the judgment must be upheld, notwithstanding the evidence may not sustain it. The practice is otherwise. The appellee, having gone to trial without objecting to the condition of the issues, must be held to have waived

the irregularity, and the pleading not answered considered as if denied. He can not raise the question for the first time in this court. *Benoit* v. *Schneider*, 47 Ind. 13; *Moffit* v. *The Medsker Draining Ass'n*, 48 Ind. 107; *Casad* v. *Holdridge*, 50 Ind. 529; *Purdue* v. *Stevenson*, 54 Ind. 161; *Holten* v. *The Board of Commissioners, etc.*, 55 Ind. 194.

The judgment is reversed, at the costs of the appellee, to be paid out of the assets of the estate yet to be administered, and the cause remanded, with instructions to sustain the motion for a new trial, and for further proceedings.