THE ALERT.[1]

SANDERS v. MUNSON.

(District Court, S. D. New York. May 22, 1894.)

CHARTER PARTY — DELIVERY OF VESSEL IN FOREIGN PORT — TIME—"ABOUT" APRIL 10TH—SEASONABLE START NECESSARY—BREACH OF CHARTER.

Where the charter of a steamer, made at New York on March 3d, which all parties knew was hired for the fruit trade, provided that the vessel should be delivered for charterer's use at a port in the West Indies "about April 10th," *held*, that the word "about" gave the owner only such additional time as might be made necessary by accidents of navigation arising on the voyage after a seasonable start; and such delay in starting as would prevent the ship from arriving at the port of delivery before April 27th was, under the conditions of the trade in which the vessel was to be employed, a breach of the charter, entitling charterer to recover against the owner any damages sustained thereby.

This was a libel by M. J. Sanders against Walter D. Munson for breach of a sub-charter of the steamer Alert to libelant.

Wheeler, Cortis & Godkin, for libelant.

Goodrich, Deady & Goodrich, for respondent.

BROWN, District Judge. The above libel was filed to recover damages for breach of a sub-charter made by the defendant, the original charterer, in not delivering the steamer Alert to the libelant's use at Santa Marta, West Indies, at "about April 10, 1893," as agreed in the sub-charter.

The sub-charter was executed through Hurlbut & Co., ship brokers, in this city, on March 3, 1893. The Alert was at that time in this city undergoing repairs by the owner. The libelant was in business at New Orleans; the defendant resided and was in business in New York. The steamer was sub-chartered to the libelant for use in the fruit trade, between Santa Marta and New Orleans, as was understood by all the parties. A round trip, with a cargo of bananas, between those ports, is usually made in from 12 to 14 days. On the 31st of March the libelant received notice that the steamer would not be able to leave New York before April 19th. The usual trip to Santa Marta from New York occupies eight days,—so that if she met with no accident on the way, she could not be expected to arive at Santa Marta before April 27; and she might arrive there even later than that date, either through failure to have the repairs at New York completed by April 19th, or through delays from sea perils, which might make the voyage from New York longer than eight days. The libelant accordingly, o_ March 31st, gave notice rescinding the charter. Some negotia-  _om  _e had between the agent of the libelant sent to this city, _nd t_e defendant, for the charter of some other steamer under the defe_dant's control, but without result; and the steamer Clari-_ _l, which was larger and faster, was afterwards chartered by the l belant from other parties.

[1] Reported by E. G. Benedict, Esq., of the New York bar.

Some testimony was offered by the defendant for the purpose of showing that there was a custom in the fruit trade which would admit of a valid delivery of a vessel at a foreign port at any time within 30 days, or upwards, before or after the date named, when the term "about" was used in the charter. The evidence is not sufficient to establish any fixed usage on this point. The use of this phrase is not general, but extends only to some charters made within about four years past. That is quite too recent, and the ideas of the different witnesses are quite too indefinite and unsettled, to show any established custom as to a precise additional time which the word "about" should give. The principal witnesses for the defendant, moreover, stated explicitly that the introduction of this clause in some of their charters, where the vessel was to be delivered at a distant port, was for the purpose of allowing for the uncertainties of navigation to a distant port, on account of the delays that might unavoidably happen on the voyage through some breakdown, or collision, or stress of weather. Interpreted in accordance with this object, it would not warrant any failure to deliver on the date named, except such as occurred through accidental causes arising upon a voyage commenced in season to arrive at the date named, under the usual conditions of navigation. Thus interpreted, this phrase would not justify any delay in a seasonable start, even though that delay was caused by the need of repairs. Tully v. Howling, 2 Q. B. Div. 182. This is, in fact, the same as the legal construction that would be given to the phrase in the absence of any evidence, but upon the common knowledge of sea perils, and the prior law, which puts at the risk of the vessel any failure to arrive at the precise date named, when that date is material and fixed without qualification. Lowber v. Bangs, 2 Wall. 728; Shubrick v. Salmond, 3 Burrows, 1637; Tarrabochia v. Hickie, 1 Hurl. & N. 185; Behn v. Burness, 3 Best & S. 751; Tully v. Howling, 2 Q. B. Div. 182; The Samuel W. Hall, 49 Fed. 281.

I cannot doubt in this case that time was an essential element of the contract; all the correspondence shows that it was so regarded from the first. The fruit season is short; the cargo perishable; previous arrangements must necessarily be made, and were made, for the bananas at Santa Marta. The vessel was to run in a line, and make semi-monthly trips. The proper care of a fruit cargo does not permit any material delay in starting on the voyage at the expected time. The use of the word "about" does not signify that time was here immaterial; but only that the precise day named was not warranted, and that allowance was to be made for accidents of the seas in going to Santa Marta. It did not absolve the vessel from the duty to leave the port of departure at a time sufficient in the ordinary course of navigation to reach the port of delivery at the date named. I hold the word "about" in this case to give only such additional time as is made necessary by accidents of navigation arising on the voyage after a seasonable start.

In the present case, the delay in starting according to the notice given by the defendant, would amount to at least 19 days, about

equal to a time sufficient for 1½ round trips, and the delay might even exceed that. This would manifestly be a substantial non-compliance with the charter, since it would not give the charterer the benefit of seasonable voyages, or of the full season's business, as was contemplated. The libelant, under this charter, had a right, as it seems to me, to the use of the vessel substantially for the whole banana season, and for the whole number of voyages, and at the times, contemplated.

In the case of Tully v. Howling, supra, Mellish, J., says:

"It was admitted on the argument before us that the year for which the Conquest was chartered commenced on the 9th of April, and that the Conquest was not really ready to receive cargo, so that the plaintiff could have had the use of her, until the 17th of June; and therefore the questions simply are, whether a person who has agreed to charter a vessel for twelve months, commencing from the 9th of April, is bound to wait until the 17th of June before he obtains possession of the vessel, and whether he is then bound to take her for a period of less than ten months? In other words, in a charter for a stipulated time, is the time of the essence of the contract, or is the charterer bound to take the vessel for a time substantially different from the time specified in the charter? We are of opinion that as in a charter for a voyage the specified voyage would be of the essence of the contract, and the charterer, if he could not have the use of the vessel for the specified voyage, would not be bound to take her for any other voyage, so in a charter for time, if the charterer cannot have the vessel for the specified time, he is not bound to take the vessel for a shorter time or a substantially different time, and if he cannot get the vessel for the specified time he may throw up the charter. In all contracts which are to be mutually performed the party who claims the performance must be ready to perform his part of the contract, and cannot compel the opposite party to take something substantially different from that which was contracted to be given."

The libelant, as I must hold, had a right to refuse to wait for the Alert, and to recover such damages as he may show to have resulted from the breach of the charter.

It was contended for the defendant that another steamer, equally good, viz. the Bergenzeren, was seasonably tendered by him in place of the Alert, but refused by the libelant when it was found that the Alert would not be able to leave New York in time. The Claribel, a large steamer, was chartered at a higher price. This, however, goes only to the question of damages. The facts as to the sufficiency of the Bergenzeren are but imperfectly proved; nor are the facts in evidence sufficient to show upon what basis the libelant's damages should be estimated; or whether he is justified in claiming for a costlier steamer than the Bergenzeren, or for a longer period than one or two voyages, until the Alert was ready.

Decree for the libelant, with a reference to compute the damages.