Argued December 15, 1909, decided January 11, 1910.

JAMES HIGGINS COMPANY v. TORVICK.

[106 Pac. 22.]

SALES—PERFORMANCE—TENDER OF PAYMENT—SUFFICIENCY.

1. Where the delivery by the seller and payment by the buyer were by the contract to be concurrent acts, an offer by the buyer to go with the seller to a bank and pay him the money on delivery is a sufficient tender of payment.

EVIDENCE—JUDICIAL NOTICE—NATURE OF VEGETABLE LIFE.

2. Courts may take judicial notice that potatoes are subject to decay, and that so late as the latter part of April it would not be good business policy for a farmer to hold a large quantity of them on hand on uncertainty as to when a car would be furnished by a buyer to take them away.

SALES—TIME FOR DELIVERY—"ABOUT."

3. Under a contract made on March 20th for the sale of potatoes to be delivered on a car to be furnished by the buyer in "about five weeks," on the failure to furnish the car within five weeks the seller was justified in selling the potatoes to another, as the phrase "about five weeks," was, considering the nature of potatoes to decay at that season, intended not to limit the time within which the buyer should furnish the car, but to limit the time within which the seller should complete the delivery, and he had the right to demand the car on any date within the time limited in the contract.

From Marion: GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE MCBRIDE.

This was an action brought by James Higgins Company against L. T. Torvick, to recover damages for breach of a contract of sale of potatoes. That part of the contract which is in writing is as follows:

"Jas. Higgins Co.,
  "317 and 319 Drum Street, Corner Oregon,
    "San Francisco, Cal.
  "L. T. Torvick has this day sold to Jas. Higgins Co. the following goods, viz.: Mt. Angel, at 80c per bushel about

500 sks. Burbanks, about 150 sks. seed Burbanks, 85c per 100; all goods to be sound and merchantable of best quality on arrival in * * to be delivered F. O. B. railroad car Mt. Angel in about five weeks, and sacks must be full open mouthed, put up with tule top in first-class marketable condition.  Sacks to average full lbs.  In consideration check have received from said Jas. Higgins Co. the sum of One Hundred (100) Dollars in part payment of above agreement; Balance to be paid on receipt of said goods received in good condition as per agreement above.

"L. T. Torvick, Seller,

"Jas. Higgins Co., Buyers,

"Per O. Brorsen.

"March 20, 1907.  Paid on account of $100.00.

"Draft on account of $————."

Plaintiff's evidence showed that it had agreed to furnish sacks for the potatoes and a car upon which to load them. There was also evidence which tended to show that the defendant lived about four miles from Mt. Angel, and that the roads were in such a condition that only about 20 sacks could be hauled at a load.  Defendant was paid $100 at the time the contract was signed, and sacks were forwarded to him a short time thereafter.  On March 28th defendant wrote plaintiff's agent in Portland that he would have all his potatoes ready by April 4th, and requested plaintiff to have a car ready at Mt. Angel at that date to receive them.  To this plaintiff's agent answered by letter, stating that the car situation was in bad shape, and that they had been unable to procure a car for delivery at that date and asking a few days' indulgence, stating that, if defendant's work was such that it would not be convenient to make delivery a few days later than the 6th of April, plaintiff would try to have Mr. Brorsen, its purchasing agent, rent a place somewhere, and take delivery and store the potatoes until cars could be obtained.  Some time between the 11th and 13th of April Brorsen called on defendant, and gave him a card authorizing him to get a car of the agent at Mt. Angel.  Brorsen also gave the agent at Mt. Angel a card,

showing where the car should be shipped, but there was no evidence that there were any cars available at Mt. Angel at any time before April 26th, or that defendant had anybody there to import and receive the potatoes until the latter date. A car was sent on the evening of April 25th, and was there available on the 26th. On the last date mentioned plaintiff's agent met defendant coming from his ranch with a load of potatoes, and said to him, "You are hauling my potatoes?" to which defendant answered, "No; I sold my potatoes to Schwab at Mt. Angel." Defendant also said that he had waited long enough. The agent said, "Now, you can go up to Mt. Angel and get your money." Defendant refused, saying that plaintiff did not owe him anything. On the 27th of April plaintiff's agent asked defendant to go with him to the bank and get his money, but defendant refused. The agent testified that he did not have the money with him, but that he could have obtained it at the Mt. Angel bank, and that he was ready and willing and able to pay for the potatoes. Defendant on the latter date returned the $100 advanced to him by plaintiff, and also paid $49, the value of the sacks which plaintiff had furnished him.

At the conclusion of plaintiff's testimony, the court, on motion of defendant, granted a judgment on nonsuit, and from such judgment plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Frank F. Freeman* and *Mr. Charles L. McNary,* with an oral argument by *Mr. McNary.*

For respondent there was a brief over the names of *Mr. George G. Bingham* and *Mr. Louis J. Adams,* with an oral argument by *Mr. Bingham.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. We think the court below erred in holding that there was not sufficient tender made by plaintiff. The evidence

tended to show that defendant had already sold his potatoes to another party, and had thereby placed it beyond his power to perform in any event. Moreover, the delivery and payment were by the terms of the contract concurrent acts. Plaintiff was to pay when the produce was delivered, not before. Under such circumstances, an offer to pay upon delivery, coupled with a willingness and present ability to do so, are all the law requires. This question is settled in this State, by the decision of this court in *Catlin* v. *Jones*, 52 Or. 337 (97 Pac. 546), which was decided since the trial of the case at bar in the circuit court.

2. The nonsuit, however, was correctly allowed upon the second ground stated. The term "about" has a somewhat flexible meaning. Thus in a contract to convey 140 acres of land it was held that the term "about" meant an approximation to that number of acres and that 134 74-100 acres was too great a variation. *Stevens* v. *McKnight,* 40 Ohio St. 341. The term "about" used in a finding that a car load of lumber is about so many feet means "not far from." *Indianapolis Cabinet Co.* v. *Herrman,* 7 Ind. App. 462 (34 N. E. 579). A contract for a sale of about 300 quarters of rye did not oblige the buyer to accept so large an excess as 50 quarters over the 300, but the excess should bear a very small proportion to the amount named. *Cross* v. *Eglin,* 2 Barn & Adolp. 106. In a contract to furnish 5,000 tons of rail road iron, it was stipulated that they were to be shipped at the rate of "about" 1,000 tons per month, beginning in February, but the whole to be shipped before August first of the same year. It was held that the contract required a shipment of 1,000 tons each month from February to June, and that a shipment of 400 tons in February and 885 tons in March justified a rescission of the contract. *Norrington* v. *Wright,* 115 U. S. 188 (6 Sup. Ct. 12: 29 L. Ed. 366). In other cases the term

"about" has been held as equivalent to the phrase "not to exceed." Thus in *People* v. *City of Riverside,* 70 Cal. 461 (11 Pac. 759) where an act of the legislature declared that a city of the sixth class must be one containing "not exceeding" 3,000 inhabitants, and the notice of an election to decide on incorporation stated that the number of inhabitants therein was "about 3,000," it was held that this was a sufficient notice to designate the city as one of the sixth class, since, if it contained "about 3,000" inhabitants, it could not exceed 3,000, prohibited by the statute. In *Simpson* v. *N. Y., N. H. & H. R. R. Co.,* 16 Misc. Rep. 613 (38 N. Y. Supp. 341), the plaintiff in an action for damages for loss of goods alleged the value of the baggage lost to be "about" a certain sum, and it was held that the term used meant "nearly," "approximately," "almost," and that his recovery must be limited to the sum named.

In estimating time it was held in *The Alert* (D. C.) 61 Fed. 504, that, where the charter of a steamer provided that the vessel should be delivered for the use of the charterer at a port in the West Indies "about" April 10th, the word "about" gave the owner only such additional time as might be made necessary by accidents of navigation arising on the voyage after a reasonable start, and such delay in starting as would prevent the ship from arriving at her destination before the 27th of April was a breach of the charter. In the case last cited the court lays stress upon the fact that the vessel was intended for the shipment of fruit, and that the season for such shipment was short and the cargo perishable, and therefore that time was of the essence of the contract. While the humble, but useful, potato, could hardly be classed as a fruit by even the most Hibernian of judges, yet we may go so far as to take notice that it is a vegetable, that like all things earthy, is subject to decay, and that so late in the year as the latter part of April it would not

be good business policy for a farmer to hold a large quantity on hand upon uncertainty as to when a car would be furnished to take them away.

The phrase "about five weeks" was confessedly put into the contract not to limit the time within which plaintiff should furnish defendant a car, but to limit the time within which defendant should complete a delivery of the goods. He had a right to begin delivery at any time and to call for a car in which to place his produce. On the 28th of March he did call for a car, and plaintiff failed to furnish it. About the 15th of April he saw plaintiff's agent and still received no car. We are of the opinion that, under the circumstances, he was not required to wait longer and allow his produce to deteriorate on his hands, as it naturally does and would have done at that season of the year. Plaintiff should have furnished him a car in such reasonable time that he could have completed his delivery approximately on April 24th. Had defendant waited until the 26th, when the car finally came, it is evident that under the conditions shown in plaintiff's testimony the delivery could not have been completed until some time early in May. The fact, if it is a fact, that the delay in furnishing a car was the fault of the railroad company, can make no difference so far as defendant's liability is concerned. If, by the neglect of the railroad company to provide adequate equipment to carry on its business, the plaintiff has been prevented from carrying out its contract and has been damaged in consequence, its remedy is against the railroad company, and not against the defendant.

The judgment of the circuit court is affirmed.

AFFIRMED.