Submitted on briefs at Pendleton October 29, affirmed December 30, 1919.

## J. L. PRICE BROKERAGE CO. *v.* BAKER GROCERY CO.

(186 Pac. 23.)

**Sales—Burden of Proof on Purchaser in Action for Breach of Contract.**

1. In an action by a purchaser for breach of a contract to deliver potatoes, the burden was on him to show, not only that he had complied with the conditions of the contract on his part, or that he was ready to comply at the time and place fixed by the contract, but also that defendant failed to deliver or have the potatoes ready for delivery on payment by plaintiff.

**Sales—Purchaser's Duty to Accept Delivery and Make Payment.**

2. Where potatoes have been sold to be delivered at a designated point, the purchaser must be on hand, either in person or by some authorized representative, to accept the potatoes and pay the price, and he cannot insist that the potatoes be billed or shipped to him from such point until payment is made; the seller having stipulated for payment through a bank at that point.

From Baker: GUSTAV ANDERSON, Judge.

In Banc.

This is an action brought by the plaintiff, a Missouri corporation, against the defendant, a corporation doing business at Baker, Oregon, to recover damages for an alleged breach of contract to deliver three carloads of potatoes. It is alleged that the defendant agreed with the plaintiff to deliver to it three car-

loads of potatoes f. o. b. Baker, Oregon, at the price
of $1.25 per hundred, in the fall of the year 1916, and
that defendant refused to deliver the same.   Plaintiff
also alleges that the price of potatoes, at the time
when the same should have been delivered, was $2.25
per hundred-weight, and that it lost the difference
between the contract price and the actual market value,
or $1 per hundred-weight, and was thereby damaged
in the sum of $900.

The negotiations between the plaintiff and defend-
ant were entirely by telegram and letter, and were as
follows:

Telegram from plaintiff to defendant:

"St. Joseph, Mo. Oct. 9th, 1916.
"Baker Grocery Co.,
    "Baker, Oregon.
"Wire best price few cars good sacked or bulk pota-
toes shipment any time this month.
                            "J. L. PRICE BROK. Co."

Telegram from defendant to plaintiff:

"Baker, Oregon, 11:20 A. M. Oct. 11–16.
"J. L. Price Brok. Co.,
    "St. Joseph, Mo.
"Wire recd, can furnish car one dollar FOB Baker.
                            "BAKER GRO. Co."

Telegram from plaintiff to defendant:

"10–11–1916.
"Baker Grocery Co.,
    "Baker, Oregon.
"Ship us one car draft bill of lading to Bank of
Buchanan County here.   Can you refer us to some
good active honest man there that we could get to buy
us few cars of potatoes on commission.   Wire our ex-
pense.   Can use several cars."

Telegram:

"Baker, Oregon, Oct. 11–1916.
"J. L. Price Brok. Co.,
    "St. Joseph, Mo.

"Wire received. We buy more potatoes than any one else. If your price is right will be glad to ship you what we can. Writing you.
"Baker Groc. Co."

Letter from defendant to plaintiff, viz:

"Baker, Oregon, Oct. 11, 1916.
"J. L. Price Brokerage Co.,
    "St. Joseph, Mo.
"Gentlemen:
    "We have your wire of the 11th, and wired you as follows: 'Wire received, we buy more potatoes than any one here. If your price is right, we shall be glad to ship what we can. Writing you.'

    "We are in position to get you quite a few cars of potatoes if some one does not come in from the outside and boost the price out of reason. I heard to-day that they were buying in La Grande and paying from $1.00 to $1.10 per hundred. We will try and get hold of a few cars for you but in case the price is advanced here we will wire you. The crop seems to be short in certain territories and they are very anxious for potatoes which has caused some of the larger houses to send men into this territory to take care of their wants.

    "We wish to confirm the order for one car to be shipped at $1.00 per hundred. This car we expect to load out in about a week as they are now digging here and we have bought some very nice potatoes.

    "I notice that you request that we make draft through the Bank of Buchanan County. We would much prefer that you would have your bank wire the First National Bank of Baker, Oregon, to pay draft when presented. We will be very glad indeed to have you look us up through any agency or write any of the banks of Baker or the Lumbermans Bank of Portland. Will state that we are a branch house of

Lang & Company of Portland, Oregon, wholesalers who have a number of branches over Oregon, Washington, and Idaho. I had a little experience about ten years ago in shipping potatoes east. While these were shipped bill of lading attached we never received a cent on them which makes us rather uneasy in regard to shipping to a firm that we never heard of before this time.

"We hope this will be satisfactory to you and thanking you for the order we are,

"Yours truly,

"Baker Grocery Co.

"S.

"JWS/RCL."

Telegram 10–12–16 (from plaintiff to defendant):

"Baker Grocer Co.,

"Baker, Oregon.

"Can use few more cars whenever you can ship.

"J. L. Price Brok. Co."

Telegram (from plaintiff to defendant):

"October 14, 1916.

"Baker Grocery Co.,

"Baker, Oregon.

"Letter eleventh received. We can use five cars good skd potatoes for shipment any time this month at one dollar ten per hundred FOB there. Will have the bank there pay you for each car as loaded. Wire acceptance at once.

"J. L. Price Brok. Co."

Telegram 10–16–1916 (from defendant to plaintiff):

"J. L. Price Brok. Co.,

"St. Joseph, Mo.

"Cannot buy at price offered in your wire.

"Baker Grocery Co."

Telegram 10–16–1916 (from plaintiff to defendant):

"Baker Grocery Co.,
    "Baker, Oregon.
"Name price at which you can load five cars.
                        "J. L. Price Brok. Co."

Telegram Oct. 17, 1916 (from defendant to plaintiff):

                    "Baker, Oregon.
"J. L. Price Bkge Co.,
    "St. Joe, Mo.
"Will load three cars at one twenty five per hundred.
                        "Baker Grocery Co."

Telegram 10–17–16 (from plaintiff to defendant):

"Baker Grocery Co.,
    "Baker, Oregon.
"Wire received. We accept three cars dollar quarter. Route U. P. Care St. Joseph Grand Island. Send draft bill of lading to Bank of Buchanan County here.
                        "J. L. Price Brokerage Co."

Letter from defendant to plaintiff, viz:

                "Baker, Oregon, 10–17–1916.
"J. L. Price Brokerage Co.,
    "St. Joseph, Mo.
"Gentlemen:
    "We have your wire of the 17th accepting our offer of three cars of potatoes at $1.25 FOB Baker. We, also, had your wire a few days ago stating you would place funds in the bank here to pay for three cars. We have not yet heard from you in this respect. If you have not already done so, please wire the First National Bank, Baker, Oregon, to pay our draft when presented. We would like to have you give this immediate attention for if we take these potatoes into

the basement it would cost considerable to také them out again.

"Yours truly,

"BAKER GROCERY CO."

"S."

Telegram Oct. 19, 1916 (from defendant to plaintiff):

"Baker, Oregon.

"J. L. Price Brokerage Co.,
    "St. Joe, Mo.

"Can you furnish cars. If not unable to ship spuds.

"BAKER GROCERY CO."

Telegram 10–19–1916 (from plaintiff to defendant):

"St. Jóe, Mo.

"Baker Grocery Co.,
    "Baker, Oregon.

"Ship soon as get cars. Keep after railroad. You confirmed three cars must furnish. We have them sold. Answer.

"J. L. PRICE BROKERAGE CO."

Telegram Oct. 24, 1916, 3 P. M. (from defendant to plaintiff):

"Baker, Oregon.

"J. L. Price Brok. Co.,
    "St. Joe, Mo.

"Unless money placed in First National Bank, Baker to pay for potatoes contract is broken. Loaded to-day and no money here to pay for it. Answer by wire.

"BAKER GROCERY CO.   8:47 P. M.

Telegram 10–24–1916 (from plaintiff to defendant):

'St. Joe, Mo.

"Baker Grocery Co.,
    "Baker, Oregon.

"Wire quick number pounds potatoes in car amount money. Will wire cash tomorrow. Answer quick. We have three more cars coming.

"J. L. PRICE BROK. CO."

Telegram Oct. 25, 1916 (from defendant to plaintiff):

"Baker, Oregon.   8:21 A. M.

"J. L. Price Bro. Co.,
    "St. Joseph, Mo.

"Wire received. Railroad company positively refuses to hold car.

"Baker Grocery Co.   11:17 A. M.

Telegram Oct. 25–1916 (from plaintiff to defendant):

"St. Joe.

"Baker Grocery Co.,
    "Baker, Oregon.

"You absolutely have to furnish those potatoes or will hold you for difference. How can we pay cash when dont know amount. Wire amount dollars quickly. Will wire cash.

"J. L. Price Brokerage Co."

That the foregoing telegrams and letters were sent and received as therein indicated on the dates and times given and stated therein, and were so sent and received in the ordinary course of business. It is stipulated that the foregoing were all the communications between plaintiff and defendant in relation to the matter.

The defendant denied that it failed to deliver the potatoes, as required by the contract, and alleges that it performed all the conditions of the contract upon its own part and had the potatoes ready for delivery.

There was a judgment of nonsuit against the plaintiff in the court below, from which it appeals to this court.                                    Affirmed.

For appellant there was a brief submitted by *Mr. O. B. Mount.*

For respondent there was a brief prepared and submitted by *Messrs. Clifford & Clifford.*

BENNETT, J.—The correspondence above was the only evidence offered on behalf of plaintiff, except some evidence in relation to the market value of the potatoes at the time of delivery, and some evidence as to the readiness and willingness of the plaintiff to take and pay for the potatoes. There was no evidence that the plaintiff had any representative at the place of delivery, to accept or pay for the same, or that it ever had any money in any bank in Baker, Oregon, or in Baker, Oregon, at all, to pay for the three carloads of potatoes.

Plaintiff claims that the defendant, after loading the potatoes, should have telegraphed it the weight of the carloads, and the amount of money necessary to make the payment, and that it was in default in its delivery, because it did not do so. The defendant, on the other hand, claims that the plaintiff should have had the money actually at the bank at Baker, Oregon, to take up the bill of lading, and that it did not do so; and that after defendant had waited as long as it could, under the railroad regulations, it was compelled to sell the potatoes to another customer at a loss.

It seems to have been the opinion of the court below that the minds of the parties never met as to where and how the payment for the potatoes was to be made, and that, therefore, there was no consummation of the contract. When the plaintiff was arranging for the shipment of the first car (which is not in controversy here) it had telegraphed:

"Ship us one car. Draft bill of lading to Bank of Buchanan County here."

In response to this telegram the defendant wrote a letter containing the following paragraph:

94 Or.—35

"I notice that you request that we make draft through the Bank of Buchanan County. We would much prefer that you would have your bank wire the First National Bank of Baker, Oregon, to pay draft when presented. * * I had a little experience about ten years ago in shipping potatoes East. While these were shipped bill of lading attached we never received a cent on them, which makes us rather uneasy in regard to shipping to a firm that we never heard of before this time."

In answer to this the plaintiff, on the 14th, telegraphed:

"Will have the bank there pay you for each car as loaded."

After some telegrams of negotiation back and forth, the defendant finally on the 17th, telegraphed:

"Will load three cars at one twenty-five per hundred."

To this the plaintiff answered on the same day:

"We accept three cars dollar quarter. *Route U. P. care St. Joseph Grand Island. Send draft bill of lading to Bank of Buchanan County here.*"

Defendant did not answer this telegram by wire, and never acceded to the latter clause of the same, but on the contrary, on the same day, wrote the plaintiff at length, saying:

"We also had your wire a few days ago stating you would place funds in the bank here to pay for three cars. We have not yet heard from you in this respect. If you have not already done so, *please wire the First National Bank, Baker, Oregon, to pay our draft when presented.* We would like to have you give this immediate attention for if we take these potatoes into the basement it would cost considerable to take them out again."

Up to this time it is clear the minds of the parties had not met as to where payment was to be made or

how. The defendant had never accepted the condition attached to plaintiff's telegram of October 17th, asking that the draft accompany the bill of lading. On the contrary, the defendant was evidently depending upon the assurance of plaintiff's telegram of the 14th:

"Will have the bank there pay you for each car as loaded."

The plaintiff in due course of business must have received the letter of the defendant demanding that the money be placed in the bank to pay for the cars as soon as loaded, on the 20th or 21st of October. It paid no attention to the letter, and did not answer it in any way, and up to the 24th of October it had made no arrangement with the Baker Bank whatever, for payment. After some intervening telegrams in relation to the providing of cars, the defendant finally, on October 24th, telegraphed the plaintiff:

"Unless money placed in First National Bank, Baker, to pay for potatoes contract is broken. Loaded car today and no money here to pay for it. Answer by wire.

"BAKER GROCERY CO."

To this the plaintiff answered.

"Wire quick number pounds potatoes in car amount money. Will wire cash tomorrow. Answer quick. We have three more cars coming."

On the next day defendant answered:

"Wire received. Railroad company positively refuses to hold car."

There was no evidence whatever that plaintiff ever did send the money to Baker City, or arrange with the Baker City bank to make payment. Apparently they accepted defendant's last telegram as a refusal

to fulfill the contract, and they never have offered or tendered any money to pay for the potatoes, nor have they ever had the money at Baker ready to pay for them.

1. Of course the burden was upon the plaintiff to show, not only that it had complied with the conditions of the contract upon its part or that it was ready to comply, at the time and place fixed by the contract; but also that the defendant failed to deliver or to have the potatoes ready for delivery upon payment by plaintiff. Yet there was no evidence offered that the defendant had failed or refused to perform, or that it did not have the potatoes ready for delivery, in accordance with its contract.

For aught that appears in the evidence, all of the potatoes may have been at the cars ready for loading, or they may have been actually loaded in the cars. If it were not for the allegation in defendant's answer that they had at some time later been compelled to sell the potatoes to other parties, there would be nothing in the case to show that the potatoes were not yet upon the railroad tracks at Baker, awaiting acceptance by the plaintiff. The loading and delivery of the cars and the payment by the plaintiff were concurrent conditions. Each had to be ready and willing at the place where the delivery was to be made to perform the conditions of the contract upon its own part, before it could hold the other party for default. It would be no compliance with the contract upon the part of the defendant, if it had kept the potatoes on the farm where they were raised, perhaps 10 or 15 miles from Baker, however willing and ready it might be to deliver. Neither was it a compliance with its part of the contract, on the part of the plaintiff, to

have the money ready at some point back in Missouri
to pay for the purchase.

2. It was the duty of the plaintiff to be on hand, at
the point designated for delivery, either in person or
by some authorized representative, to accept the pota-
toes and pay the price. It may be a question as to
whether the plaintiff could insist upon the loading of
the potatoes in cars, until it was there by a repre-
sentative ready to pay the money, but certainly it
could not insist that the potatoes be turned over to
it, or billed or shipped to it, until the money was paid.
It seems to be the contention of the plaintiff that the
defendant was bound to wire to it the weight of the
potatoes and the amount of money necessary, and
then give it time, after the potatoes were loaded, to
make arrangements with the bank at Baker to pay for
the same.

That might have been a gentlemanly and courteous
thing for the defendant to do, but we cannot see that
it was under any such legal obligation. If the plain-
tiff had arranged for some representative to be pres-
ent and to accept the potatoes and make payment for
the same, there evidently would have been no trouble.
It would not have been necessary for the plaintiff to
send three times the money, or any sum of money, to
the bank at Baker, as suggested by it. If it was a
reputable concern, it would have been very easy for
it to arrange, through its bank at home with the bank
at Baker, to pay whatever sum should appear to be
due upon presentation of the bill of lading. This was
what the defendant asked plaintiff to do, but it seems
to have gotten stubborn, and insisted upon financing
the arrangement at long distance in its own way. In
doing this, it got itself in a position where it was

unable to make a strict and literal performance of the conditions of the contract upon its own part.

It is doubtful whether the minds of the parties ever met as to the place and manner of payment, in such a way as to make a consummated contract; but assuming that they did, we think the plaintiff has not shown a sufficient performance of the contract upon its part or a breach of the contract upon the part of the defendant. In reaching this conclusion we do not find it necessary to pass upon the question as to whose duty it was to furnish the cars upon which the potatoes were to be loaded.

The judgment of the court below is affirmed.

AFFIRMED.

---

Motion to dismiss appeal submitted February 28, overruled April 8, argued on the merits November 12, 1919, affirmed January 6, 1920.