Argued February 8, reversed and remanded May 23, petition to modify opinion denied June 20, objections to cost bill sustained July 18, 1922.

# LIVESLEY *v.* STRAUSS.

(206 Pac. 850; 207 Pac. 1095.)

**Sales—Contract Held not to Contemplate Giving of Notice Before Delivery.**

1. A contract for the sale of hops, to be delivered between certain dates, and providing for five days' notice before making shipment, *held* to contemplate the giving of notice only in case sellers elected to deliver before the last day upon which delivery could be made.

**Sales—Matters to be Shown by Buyer to Recover Advancements Made by Reason of Nondelivery.**

2. Where payment of balance of purchase price and delivery of goods were concurrent acts, the sellers were not obliged to deliver

until the buyer paid, and the buyer was not obliged to pay until the sellers delivered, and after expiration of the time set for delivery, the buyer cannot recover any part of the advances made, unless he asserts a right of recovery, and cannot successfully assert any right of recovery unless he pleads facts essential to create such right, and it is not enough to say that only a partial delivery was made before the date set.

### Sales—Showing to be Made by Buyer to Recover Damages for Nondelivery.

3. To entitle buyer to recover damages for nondelivery, where the covenant to deliver and the covenant to pay are concurrent, he must show performance on his part or an offer to perform, or a legal excuse for not performing, or offering to perform, and ordinarily that he was ready, able and willing to perform, even though seller was not present at the time and place of delivery.

### Sales—Buyer may Recover Advances on Refusal of Seller to Perform.

4. If a contract has been put an end to by the refusal of the seller to perform, the buyer may recover any money paid by him in part performance.

### Sales—Buyer may Recover Advances if Neither Ready to Perform.

5. If neither party to a contract of sale is ready to perform within the prescribed time, both are in default, and advances made by the buyer may be recovered.

### Sales—Buyer in Default cannot Recover Advances.

6. The buyer cannot recover advances if he stops short in performance and the seller is willing and ready to proceed.

### Appeal and Error—Exclusion of Evidence not Reversible, Where Court not Informed as to Answer.

7. Refusal of court to permit witness to answer questions cannot be basis of reversal of judgment, where the questions did not suggest the answer which would have been given if the witness had been permitted to answer, and the court was not informed as to what the witness would state if permitted to testify.

### Costs—Term Properly Includes Only Indemnity for Attorney Fees.

8. Under Section 561, Or. L., the term "costs" properly includes only the indemnity for attorney fees fixed by statute.

### Costs—Fifteen Dollars Allowed in Supreme Court on Appeal.

9. The amount of costs allowed in Supreme Court to the party prevailing on an appeal is $15.

### Costs—Cost of Transcript Chargeable in Supreme Court.

10. By force of Laws of 1921, page 621, the cost of a transcript, including certified copies of the judgment, notice of appeal, and undertaking on appeal, skeleton or short form of bill of exceptions, transcript of the whole testimony, and all of the proceedings at the trial, or long form of bill of exceptions, is chargeable in the Supreme Court.

Costs—Appellant not Entitled to Reimbursement for Duplication if He Files Both Long and Short Bill of Exceptions.

11. An appellant may prepare and file both a long and a short form of bill of exceptions, but, if he prevails, is not entitled to reimbursement for the expense of duplication.

Costs—Reimbursement Allowed for Certified Copy of Judgment and Other Copies Prepared by County Clerk.

12. Reimbursement may be had for the certified copy of the judgment and other copies prepared by the county clerk at the rates fixed by section 3635, Or. L.

Costs—Reimbursement Allowed for Expense of Transcript.

13. Reimbursement may be had for the expense of the transcript of the whole testimony and all of the proceedings at the rate fixed by section 931, Or. L.

From Marion: George G. Bingham, Judge.

Department 1.

The plaintiffs T. A. Livesley and John J. Roberts are partners residing in Oregon and doing business under the firm name of T. A. Livesley & Co. The defendant Edwin Strauss resides in London, England, and deals in hops under the name of Strauss & Co. For the sake of brevity the plaintiffs will be called the partnership, and the defendant will be referred to as Strauss. H. L. Hart resides in Oregon and for a number of years has been engaged in growing, selling and shipping hops. During a period of four or five years Hart acted as buyer for Strauss. The E. Clements Horst Company is engaged in the hop business with offices in San Francisco.

In July or August of 1915 Hart purchased for Strauss 2,100 bales of hops at Sacramento, California, from the Horst Company. After the hops were inspected and weighed by Hart, they were loaded into cars at Sacramento. Although the record is not as illuminating in some respects as might be desired we understand that the Horst Company had chartered a tramp steamer called the "Bollington Grange." This steamer was scheduled to sail from

New York for England early in August, 1915, and space in this vessel was available for the shipment of the hops purchased from the Horst Company by Hart for Strauss. The hops were transported overland to New York and there loaded in the "Bollington Grange." After the ship had arrived at Cardiff, Livesley paid to the Horst Company $8,066.10, the amount which the Horst Company and Hart represented was the amount of the freight paid by the Horst Company on 1,150 bales of hops shipped. Hart was informed by the Horst Company that space in the "Bollington Grange" would be available but that freight must be prepaid. Hart communicated with Strauss, who immediately notified Hart by cable that he would "only pay freight London against delivery. Otherwise ship by Atlantic Transport on through rate as usual." Hart says that because of the congested condition on the Atlantic seaboard and the uncertainty as to the time of shipment on any other vessel, and because of the immediate availability of the "Bollington Grange," he was anxious to have the hops go on the "Bollington Grange." Hart discussed the matter with T. A. Livesley and exhibited the cablegrams received from Strauss. The partnership prepaid the freight, expecting, as T. A. Livesley says, to be repaid when the hops arrived at London. Strauss refused to acknowledge any liability to the partnership for the payment of the freight, and thereupon the plaintiff commenced this action against Strauss for the recovery of $8,066.10 by filing a complaint drawn on the theory of money had and received.

Strauss answered by denying all the allegations in the complaint charging liability, and in addition the defendant pleaded a counterclaim. The counterclaim

is based upon a hop transaction which is entirely independent of the transaction involving the hops purchased from the Horst Company and shipped on the "Bollington Grange." On May 15, 1915, the partnership and Hart entered into a written contract whereby the partnership agreed to sell and Hart agreed to buy, at 11 cents per pound, 100,000 pounds of hops to be produced in 1915 on the Percival farm located about one mile from Orville in Marion County, Oregon. The writing, among other things, provided:

"Fourth. · * * All of said hops shall be delivered in lots of not less than carload lots, f. o. b. cars at warehouse at Orville, Oregon, between the 1st day of October, 1915, and the 30th day of November, 1915, seller's option. * *

"Sixth. The seller hereby agrees to serve written notice upon the buyers of his intention to deliver said hops at least five days before the day on which he proposes to tender the delivery of said hops, which notice shall be served by the seller upon the buyers, or upon the duly authorized representative of the buyers.

"Seventh. The buyers agree to pay the seller for said hops in United States coin, in the manner following, to wit: Two thousand ($2,000) dollars at the time of the execution hereof, the receipt whereof is hereby acknowledged, five thousand ($5,000) Dollars on or about Sept. 1, 1915, and the balance, less interest on advances, at none per cent per annum from the date of such advances, when said hops are delivered to and accepted by the buyers. * *

"Tenth. The sellers and buyers further mutually covenant and agree that should any breach be made in the terms of this contract by the seller, the buyers, not being in default, shall be entitled to recover from the seller all advances made by them under the terms hereof, with interest thereon from the date of said advances, at the rate of 8 per cent per annum, and

shall also be entitled to recover damages against the seller for such breach, which damages shall be ascertained by subtracting the contract price herein specified of the number of pounds of hops contracted to be delivered, from the market value of the same quantity of hops of the quality in this contract specified, at the railway station, at the place of delivery herein specified, on the last day provided in covenant 'Fourth' hereof, on which the seller covenants to deliver said hops, which remainder is hereby covenanted and agreed to be the measure of damages which may be recovered for such breach. * * ."

On May 17, 1915, Hart assigned his interest in the contract to Strauss. At the time of the execution of the contract Hart paid the partnership $2,000. On September 1, 1915, Strauss advanced to the partnership $5,000, and on September 23, 1915, Strauss advanced the further sum of $1,185.52, making a total of $8,185.52 paid to the partnership. On September 17, 1915, the partnership delivered to Strauss under the contract 29,642 pounds of hops. It was stipulated at the trial that—

"the plaintiffs in the case only claim to have delivered under its contract with Hart, which was later assigned to Strauss & Co., 29,642 pounds of hops."

In his counterclaim Strauss pleads the contract and its assignment, the payment of the advances, the delivery of the 29,642 pounds of hops, and then he alleges:

"That without any fault on the part of the defendant, the plaintiffs neglected, failed and refused and at this time refused to deliver to the defendant the balance of said 100,000 pounds of hops as provided in said contract, although delivery of said balance has often been demanded by the defendant."

The allegation last quoted is denied by the plaintiffs in their reply.

The complaint is drawn upon the theory that Strauss is liable to the partnership for $8,066.10 as for money had and received on account of the payment of that sum by the partnership to the Horst Company for the freight charges on 1,150 bales of the hops shipped to Strauss. The denials in the answer are based upon the theory that Strauss is not liable to the partnership in any sum on account of the payment of freight by the partnership; and the counterclaim was framed upon the theory that the partnership is entitled to retain out of $8,185.52, being the amount paid as advances, the sum of $3,260.62, being the price of 29,642 pounds of hops at 11 cents per pound, but that the partnership is obliged to return to Strauss $4,924.90, being the balance of the advances, for the reason that only 29,642 pounds of hops were delivered to Strauss. The reply is drawn upon the theory that Strauss is not entitled to recover any of the advances.

The jury returned a verdict for Strauss for $4,924.90. The verdict on its face indisputably shows that the jury disallowed the claim made by the plaintiffs for the freight, and that after deducting from the total advances the price of 29,642 pounds of hops delivered, they allowed Strauss' claim for the balance of the advances. A judgment was entered on the verdict and the plaintiffs appealed.

REVERSED AND REMANDED. PETITION TO MODIFY OPINION DENIED.

For appellants there was a brief over the name of *Messrs. McNary, McNary & Keyes,* with oral arguments by *Mr. John H. McNary* and *Mr. Walter E. Keyes.*

For respondent there was a brief over the names of *Mr. C. O. Fenlason* and *Messrs. Burnett, Gronnert & Sheppard,* with an oral argument by *Mr. C. O. Fenlason.*

HARRIS, J.—The court instructed the jury that if they found that the plaintiffs were entitled to recover the amount paid for freight they should deduct $4,924.90; or if they found that the plaintiffs were not entitled to recover any amount on account of the freight they should return a verdict for the defendant for $4,924.90. In other words, the court told the jury that Strauss was entitled at all events to the return of the advances made on the contract after deducting the price of the 29,642 pounds of hops delivered. This instruction was error.

The pleadings admit that on September 17, 1915, the partnership delivered 29,642 pounds of hops, and the parties stipulated that this quantity only was delivered. The pleadings admit and the parties stipulated that the plaintiffs were entitled to retain out of the total advances the sum of $3,260.62, being the price of the 29,642 pounds of hops delivered.

The defendant alleged that without fault on his part and notwithstanding the demands made for delivery, the plaintiffs failed and refused to deliver to the defendant the balance of the 100,000 pounds of hops contracted to be delivered; but this allegation was denied by the plaintiffs. Strauss alleged and the partnership denied that the defendant was entitled to recover the balance of the advances, and hence this was the issue raised by the counterclaim and reply.

It is admitted that 29,642 pounds of hops were delivered on September 17, 1915, and that no more hops were delivered; but otherwise the record is

absolutely silent. We cannot know whether the partnership refused to make further deliveries, or, if they did refuse, whether they were justified because of any fault on the part of Strauss. We cannot learn from the record whether Strauss was or was not in fault. The record gives no information whatever concerning the conduct of the plaintiffs or of the defendant.

The written contract definitely prescribes the quantity of hops to be delivered, the price, and the place of delivery. The time for delivery is "between the first day of October, 1915, and the thirtieth day of November, 1915, seller's option"; but the sellers agreed to serve written notice upon the buyer of their intention to deliver the hops at least five days before the day on which they proposed to tender the delivery of the hops. The defendant argues that the giving of notice was made a condition precedent; that the failure to give notice, if there was such failure, constituted a breach; and that it was incumbent on plaintiffs to show that notice had been given in order to prevent the defendant from recovering the advances. We do not know whether notice was or was not given. If notice was given then the day designated in the notice became the time for the performance of the contract. The writing fixed two extreme dates within which delivery was to have been made. It will be observed that the word "between" is used. We do not decide whether the word "between" excludes the first day of October and the thirtieth day of November, thus making October 2d the first and November 29th the last day upon which delivery could be made, or whether the term "between" includes October 1st and November 30th and fixed those days as the first and last days upon

which delivery could be made (see 2 Mechem on
Sales, p. 978; 35 Cyc. 177, note; *Fowler* v. *Rigney,*
5 Abb. Pr. (N. S.) 182); but we shall assume for
convenience of discussion that October 1st and
November 30th are included.

1. If it be supposed that the partnership did not
give any notice, then the inquiry is: Was such fail-
ure a breach of the contract? This inquiry must be
answered by ascertaining the intention of the par-
ties, and that intention must be determined by the
language appearing in the writing. The primary
object was the sale of 100,000 pounds of hops at a
given price. The time and place of delivery were
merely details to be observed in accomplishing the
primary object. The place of delivery was fixed.
The time for delivery covered a period of two
months. The contract provided for the payment of
advances, but the balance of the purchase price was
made payable at the time of delivery. The contract
did not require the sellers to deliver before Novem-
ber 30th, if it be assumed that delivery could be
made on that date, but it did give them an option to
deliver before that day. Since the contract required
the buyer to pay on the day of delivery the parties
naturally provided for the giving of a notice so that
if the sellers wished to deliver before the last day
specified by the contract the buyer could attend at
the prescribed place and at the time fixed by the
sellers. Obviously the parties intended that the
sellers must deliver not later than November 30th.
The sellers were permitted to elect to deliver before
November 30th but if they did so elect they were re-
quired to give notice. The contract contemplated
that the sellers could but were not obliged to
deliver before November 30th. The contract also
contemplated that the sellers could deliver on

November 30th and that if they did not sooner de-
liver they were at all events obliged to deliver on
that day, and hence no notice would be necessary
for delivery made on that date. In paragraph
Tenth, the parties refer to "the last day provided in
covenant 'Fourth' hereof, *on which the seller cove-
nants to deliver said hops.*" Clearly the plaintiffs
covenanted to deliver on the last day of the two
months unless by giving five days' notice they elected
to deliver at an earlier date. The parties of course
could have made a contract requiring the giving of
a notice at all events; but the language used by
them indicates that they contemplated the giving
of a notice only in case the sellers elected to deliver
before the last day upon which delivery could be
made. The contract by its own force fixed the last day
as the time for performance unless the sellers inter-
vened and fixed an earlier day for performance.
Our conclusion is in harmony with other adjudica-
tions dealing with similar contracts: *Cleveland* v.
*Sterrett*, 70 Pa. St. 208; *Chandler* v. *Robertson*, 39
Ky. 295; *Willmering* v. *McGaughey*, 30 Iowa, 205
(6 Am. Rep. 673); *Sousely* v. *Burns*, 10 Bush (Ky.),
87; *Kirkpatrick* v. *Alexander*, 60 Ind. 95; 35 Cyc.
182; 2 Mechem on Sales, p. 974, note; 23 R. C. L.
147. See also: *Conawingo Petroleum Refining Co.* v.
*Cunningham*, 75 Pa. St. 138; *North* v. *Kizer*, 72 Ill.
172; *Richey* v. *Shinkle*, 36 Kan. 516 (13 Pac. 795);
*Stanford* v. *McGill*, 6 N. D. 536 (72 N. W. 938, 38
L. R. A. 760); *York* v. *Newland*, 10 Humph. (Tenn.)
330. If the sellers gave such a notice as is pre-
scribed by the contract, then the day designated in
the notice became the time for delivery; or if no
notice was given, then the last day of the period
became the time for delivery. If therefore the sell-

ers failed to give a notice to the buyer such failure did not constitute a breach of the contract.

2. When the time came for delivery, whether fixed prior to November 30th by the giving of a notice or falling on November 30th because the sellers did not elect to fix an earlier date, it was the duty of the sellers to deliver at that time and at the place specified in the contract, and it was likewise the duty of the buyer to attend and receive the hops and pay the balance of the purchase price. The contract made delivery of the hops and payment of the balance of the purchase price concurrent acts to be performed simultaneously. The sellers were not obliged to deliver until the buyer paid. The buyer was not obliged to pay until the sellers delivered: *Catlin* v. *Jones,* 48 Or. 158, 162 (85 Pac. 515); *Catlin* v. *Jones,* 52 Or. 337, 339 (97 Pac. 546); *James Higgins Co.* v. *Torvick,* 55 Or. 274, 277 (106 Pac. 22); *Longfellow* v. *Huffman,* 49 Or. 486, 490 (90 Pac. 907); *Mann & Beach* v. *Flynn,* 62 Or. 465, 469 (126 Pac. 274); *J. L. Price Brokerage Co.* v. *Baker Grocery Co.,* 94 Or. 538, 549 (186 Pac. 23).

Advances paid to the plaintiffs became their moneys when received by them. Strauss cannot recover any part of the advances unless he asserts a right of recovery, and he cannot successfully assert any right of recovery unless he pleads and proves whatever facts may be essential to create and sustain such right. It is not enough for Strauss to say that only a partial delivery was made. The bare fact of nondelivery does not deprive the partnership of the right to retain the advances or confer upon Strauss the right to a return of the advances. Strauss recognized that it was incumbent to allege facts which, if true, conferred upon him the right to recover a portion of the advances; for he alleged

that without fault on his part the partnership refused to deliver. But the record is devoid of any evidence explaining why no more than 29,642 pounds of hops were delivered. It may be that both parties were in fault. It may be that the plaintiffs alone were in fault. It may be that the defendant alone was in fault. It may be that the parties rescinded and put an end to the · contract after the delivery of 29,642 pounds of . hops. The right asserted by Strauss in his counterclaim must, like any other right affirmatively asserted, be alleged and proved by him.

·3. It must be remembered that Strauss is not attempting to recover damages; for he is only asking for a return of a portion of the advances. If Strauss had sought to recover damages he would have been obliged to allege and prove more than the mere default of the sellers. The right to damages is based upon the idea that a party to a contract is injured because another party has failed to perform it. The recovery of damages is a substitute for the enforcement of the very terms of the contract; and consequently to recover damages in a case where the covenant to deliver and the covenant to pay are concurrent, the buyer, or seller, must show performance on his part, or an offer to perform, or a legal excuse for not performing or offering to perform; and ordinarily the buyer must show that he was ready, able and willing to perform even though the seller was not present at the time and place of delivery. Neither party can maintain an action on the bare fact that the other has not performed his covenants: *Lewis* v. *Craft,* 39 Or. 305, 313 (64 Pac. 809); *Catlin* v. *Jones,* 48 Or. 158 (85 Pac. 515); *Longfellow* v. *Huffman,* 49 Or. 486, 491 (90 Pac. 907); *Catlin* v. *Jones,* 52 Or. 337, 339 (97 Pac. 546); *Krebs Hop Co.* v. *Livesley,* 55 Or. 227, 235

(104 Pac. 3); *Schucking* v. *Young,* 78 Or. 483, 493
(153 Pac. 803); *Chandler* v. *Robertson,* 39 Ky. 292,
295; *Sousely* v. *Burns,* 10 Bush (Ky.), 87. If the
buyer is entitled to recover damages on the theory
that the contract is kept alive and continued for that
purpose, it is plain that he is also entitled to recover
all advances if no delivery has been made, or if par-
tial delivery has been made he can recover advances °
to whatever extent they exceed the delivery made:
2 Mechem on Sales, § 1734.

Although the buyer is entitled to the return of the
advances, in whole or in part depending upon total
or partial failure of delivery, if he is entitled to
damages, it does not necessarily follow that if he
is not entitled to damages that he is not entitled to
a return of advances.

4, 5. If a contract has been put an end to by the
refusal of the seller to perform, the buyer may re-
cover any money paid by him in part performance;
and, furthermore, if neither party is ready by the
prescribed time, both are in default, and the ad-
vances may be recovered by the buyer: *Ketchum*
v. *Evertson,* 13 Johns. (N. Y.) 359 (7 Am. Dec. 384);
*Raymond* v. *Bearnard,* 12 Johns. (N. Y.) 274 (7 Am.
Dec. 317); *Packer* v. *Button,* 35 Vt. 188; *Cleveland*
v. *Sterrett,* 70 Pa. St. 204; *Bell* v. *Hatfield,* 121 Ky.
560 (89 S. W. 544, 2 L. R. A. (N. S.) 529); 2 Mechem
on Sales, § 839; 35 Cyc. 603, 605.

6. But the buyer cannot recover advances if he
stops short in performance and the other party is
ready and willing to proceed: *Lewis* v. *Craft,* 39 Or.
305, 314 (64 Pac. 809); *Ketchum* v. *Evertson,* 13
Johns. (N. Y.) 359 (7 Am. Dec. 384, 386); *Monroe*
v. *Reynolds,* 47 Barb. (N. Y.) 574; *Packer* v. *Button,*
35 Vt. 188.

Thus it is seen that the failure to deliver the balance of the hops may have been rightful, or it may have been wrongful; and consequently the failure to deliver may or may not, depending upon the circumstances, entitle the buyer to recover advances. It devolves upon the buyer, as contended by the plaintiffs at the trial of the instant case, to allege and prove a fact situation entitling him to a return of the advances before he can recover them; and, therefore, since there was no evidence explaining the fact of nondelivery, it was reversible error to submit the counterclaim to the jury.

7. The plaintiffs assign as error the refusal of the court to permit them to show that Hart testified that one Livingston, an alleged agent of Strauss, made admissions binding upon Strauss. The ruling of the court seems to have been based upon the motion that there was no evidence that Livingston was an agent; but the record shows that Hart testified that Livingston was the general representative of Strauss. However, the questions asked the witness did not suggest the answer which would have been given if the witness had been permitted to answer, nor did the plaintiffs inform the court what the witness would have stated if permitted to testify; and consequently we cannot know whether the plaintiffs were injured by this ruling of the court.

As previously stated the record is not as complete as might be wished; and for that reason we find it difficult, without dealing in pure abstractions, to discuss any of the questions that may possibly arise out of the claim made by the plaintiffs for reimbursement of moneys paid for freight.

The judgment is reversed and the cause is remanded for a new trial.

                               REVERSED AND REMANDED.

BURNETT, C. J., and McBRIDE and RAND, JJ., concur.

---

Objections to cost bill sustained in part July 18, 1922.

## ON OBJECTIONS TO COST BILL.

(207 Pac. 1095.)

*Mr. C. O. Fenlason* and *Messrs. Burnett, Gronert & Sheppard,* for the objections.

*Mr. John H. McNary, Mr. Walter E. Keyes* and *Messrs. McNary, McNary & Keyes, contra.*

HARRIS, J.—8, 9. The plaintiffs filed a cost bill claiming, among other items, the sum of $159 as "costs," and the further sum of $70.60 as "cost of transcript." The defendant objected to the item listed as "costs $159." The term "costs" properly includes only the indemnity for attorney fees fixed by statute: Section 561, Or. L.; *In re Pittock's Estate,* 202 Pac. 216. The amount of costs allowed in the Supreme Court, on an appeal, to the prevailing party is $15. The item listed as "costs" will be reduced from $159 to $15.

10. The defendant objected to the item listed as "cost of transcript $70.60" upon two grounds: (1) That it is not properly chargeable; and (2) that it is "unreasonable and out of proportion to the actual

cost of the same." This item is now by force of a statute, recently enacted, properly chargeable in this court: Chapter 322, Laws 1921. See *Shepherd* v. *Inman Poulsen Lumber Co.*, 85 Or. 639 (167 Pac. 758); *Burdick* v. *Tum-a-Lum Lumber Co.*, 97 Or. 459, 461 (191 Pac. 654).

11–13. We shall assume that the plaintiffs intended the word "transcript" to include certified copies of the judgment, notice of appeal, and undertaking on appeal, the skeleton or short form of a bill of exceptions, and also the transcript of the whole testimony and all of the proceedings at the trial or long form of a bill of exceptions. The appellants presented a short form of a bill of exceptions accompanied by a transcript of the whole testimony and of all of the proceedings at the trial: See *Malloy* v. *Marshall-Wells Hardware Co.*, 90 Or. 303, 321 (173 Pac. 267, 175 Pac. 659, 176 Pac. 589). An appellant may of course if he wishes prepare and file both a long and a short form of a bill of exceptions, but if he prevails upon the appeal he is not entitled to reimbursement for the expense of duplication. The appellants are entitled to reimbursement for the certified copy of the judgment and other copies prepared by the county clerk at the rates fixed by Section 3635, Or. L. The appellants are entitled to reimbursement for the expense of the transcript of the whole testimony and all of the proceedings at the rate fixed by Section 931, Or. L. The item listed as "cost of transcript $70.60" will be reduced to $21.30.          OBJECTIONS SUSTAINED IN PART.

BURNETT, C. J., and McBRIDE and RAND, JJ., concur.