# Cullum *versus* Wagstaff.

*Objections to evidence should be specific and fully set out in bills of exception.—Proper mode of answering point containing controverted facts.*

1. An objection to evidence offered and received on the trial of a cause should be specific and appear fully in the bill of exception: if general, and the evidence be pertinent for any purpose, its admission is not error.

2. Thus where evidence was admitted as to the price of oil-barrels at certain places, and on error, it was argued that the price at another place was to govern, but the bill of exception only stated "the offer of the plaintiff to prove the price of the barrels at those places, to show damages" and the "general objection of the defendant," it was held not error to overrule the objection.

3. In an action for breach of contract to deliver barrels upon a boat in a designated creek, when they were to be paid for, it was held the duty of the defendant when prepared to deliver them to notify the plaintiff of his readiness to perform his contract: and where without such notice he took them away and sold them elsewhere, he was held liable for a breach of contract.

4. Where facts are assumed in a point propounded by a party, which point the party denies, and the court cannot charge as requested, without assuming the disputed facts to be true, it is not error to refer the facts to the jury with instructions as to the effect of the contract and the duties of the parties.

5. Where a defendant contracts by parol to deliver a number of barrels of oil, but of no specified capacity, it is for the jury to determine whether the contract was fulfilled by the delivery of a less number of vessels of a greater capacity than the statute barrel; and it is not error, where no specific instruction was requested, that in the absence of a standard of measurement fixed by the parties, the statute standard would govern; to submit this question to the jury for their determination.

ERROR to the Common Pleas of *Venango county.*

This was an action of *assumpsit*, by David Wagstaff against H. Cullum, to recover damages for the non-delivery of five hundred oil-barrels, and thirty-five barrels of crude petroleum, to which was added a claim for money had and received, and the use and occupation of a boat which the plaintiff averred he had bought of defendant, but which the latter had sold at Pittsburgh.

The contract for the barrels and boat was as follows:—

"This is to certify, that Horace Cullum, of Meadville, Penna., and F. T. Munson, agent, of Weedsport, Cayuga co., N. Y., have agreed as follows:

"Said Cullum is to furnish one thousand oil-barrels at $1.80 per barrel, at Meadville, for said Munson. Five hundred to be sent at once to Shaw's Landing, at 5 cents per barrel, free of any other charge. The other five hundred to be put upon French creek boat (now lying in French creek), when the first water comes sufficient to run out the boat with five hundred empty barrels.

"This is further to certify, that said Cullum has this day sold to said Munson, agent, a French creek boat, now lying in French creek, for the sum of $80; said boat is to be in proper order for running five hundred empty barrels safely out of the creek by the time the first water comes sufficient to run said boat and load out. Said Munson, agent, is to give a draft on David Wagstaff, of N. Y. city, for the payment of same. Payment of the first five hundred and boat to be made as soon as the first five hundred barrels are delivered at Shaw's Landing, by presenting a receipt from Shaw that they are so delivered at his landing. The other five hundred to be paid for as soon as they are delivered on board the boat in French creek (preparatory for running out on the first water), said draft on Wagstaff to be on sixty days' time, said Munson, agent, paying the discount to said Cullum.

"H. CULLUM.
"F. T. MUNSON, Agent.
"Meadville, September 27th 1862."

On the 3d November 1862, the same Munson, agent, bought from Cullum one thousand barrels of oil, for which Cullum gave him an order on one Olmstead. It was admitted by Munson that

[Cullum *v.* Wagstaff.]

he had received from Olmstead on this order nine hundred and sixty-five vessels full of oil, each containing forty gallons, or in the aggregate more than one thousand statute barrels. Olmstead refused to deliver any more oil, claiming that he had filled the order. The evidence of Munson was that nothing was said about the size or capacity of barrels when he made the contract for the oil, but it was claimed that according to the custom of the oil region, the plaintiff was entitled to forty gallons to the barrel.

On the trial it appeared that five hundred of the oil-barrels were "delivered at Shaw's," but the remaining five hundred were not loaded or ready for delivery at the time stipulated in the contract, although they were sent for, and defendant was informed by telegraph, after the "first rise in the water," that a draft for the price was ready at any time. On the second rise of the river, the barrels were run down and sold by the defendant as his own.

The plaintiff also offered to prove "the price of barrels in Franklin and Oil City, for the purpose of showing damages," to which defendant objected generally, but without stating in his bill of exceptions any particular ground of objection, or any reason why the evidence should not be received.

The court overruled the objection, and admitted the evidence.

The defendant requested the court to instruct the jury,

1. The plaintiff having neglected to come for the barrels and pay for them at the time of the first or second rise in French creek, cannot recover damages for the non-delivery of the barrels.

2. There is no sufficient evidence that the plaintiff did not receive all the oil purchased from defendant.

3. The plaintiff having shown that on his purchase of one thousand barrels of oil he has received nine hundred and sixty-five vessels full, each holding more than forty gallons, cannot claim a deficiency in the delivery.

Which the court below answered as follows:—

"1. Whether there was neglect on the part of plaintiff's agent in not looking after the barrels at the time of the first and second rises in French creek, is for the jury. The plaintiff was bound by the contract to give a draft for the last five hundred barrels 'as soon as they were delivered on board of the boat in French creek,' and until they were so delivered the defendant could not demand or claim the draft—the defendant could not run off the barrels and sell them to another without first giving notice, or endeavouring to do so, to plaintiff or his agent, without first waiting a reasonable time after the barrels were delivered on the boat. If Cullum had either given notice or waited a reasonable time, plaintiff cannot recover damages for the barrels. If not, plaintiff is entitled to such damage as he sustained.

[Cullum v. Wagstaff.]

" 2. There is some evidence that plaintiff did not receive all the oil purchased, and the effect of it is for the jury.

" 3. Whether a statute barrel of thirty-one and a half gallons was intended by the parties, or one of Cullum's barrels, holding more than that, is for the jury from all the evidence."

Under these instructions there was a verdict and judgment for plaintiff. Whereupon the defendant sued out this writ, averring here that the court below erred in admitting evidence of the price of barrels at Franklin and Oil City, and in not charging the jury as requested in the points above given.

*Heydrick & Snowden,* for plaintiff in error.

*John S. McCalmont,* for defendant.

The opinion of the court was delivered by

AGNEW, J.—The point made by the plaintiff in error upon the bill of exception to the admission of evidence of the price of oil-barrels at Franklin and Oil City is, that it was the market value at Meadville which should govern. The bill merely states that the plaintiff offered to prove the price at these places for the purpose of showing damages, to which the defendant objected. But on what ground did he object? His bill does not inform us. The ground stated orally to the court might be entirely insufficient. Great injustice might be done to the court below in presuming it was upon the ground taken here. A judge is not bound, nay, cannot always think of every objection which can be urged. He decides upon the objection stated by the counsel, and it is the duty of counsel to see that his point goes fairly into the bill. In legal contemplation the bill is drawn up and presented by the party who excepts, and though a note of it at the time is sufficient, it is his duty to see that the bill is made up correctly before it is tacked to the record.

The party offering evidence is bound, if requested, to state the purpose of it fully, and the party who objects must state his objection. If he decline to do so, it is good ground for the court to overrule a general objection; or if the record go up on a general objection only, the ruling of the court will be sustained if the evidence be proper for any purpose: Milliken v. Barr, 7 Barr 23; Richardson v. Stewart, 4 Binn. 201; Benner v. Hauser, 11 S. & R. 356; Small v. Jones, 6 W. & S. 125. These rules are necessary to prevent injustice both to court and parties. This bill does not fairly raise the point we are asked to decide.

We see no error in the answer to the defendant's first point. The court could not answer it as requested without charging the facts stated in it to be true. These facts were not admitted, and the court therefore left them to the jury with instructions upon the effect of the contract, and the duty of the parties under it.

[Cullum *v.* Wagstaff.]

The contract required the defendant to put the last five hundred barrels *upon the boat then lying in French creek,* which by the same contract he sold to the plaintiff. He was to be paid for the barrels by a draft *as soon as they were delivered on board of the boat in French creek,* "preparatory for running out on the first water." The barrels were not delivered on board, but were merely held in readiness for delivery when the rise in the water came. The court therefore charged that the defendant was bound to notify the plaintiff of his readiness to deliver them, or to deliver them on board and wait a reasonable time before disposing of them to another. In effect the instruction was, that the defendant not having complied, with the contract himself, and having run them off and sold them, could not set up the plaintiff's want of readiness caused by his own act. It is certainly true, where mutual or concomitant acts are to be performed, a party cannot recover without showing his own readiness to perform. But here, until the plaintiff had notice of the defendant's readiness to load the barrels on board, or until they were actually on board, he could not know when to be ready to tender the draft. The time of his performance had not arrived, nor could it arrive until the defendant moved in the matter by loading the barrels. If the defendant was ready to load them, as he asserts, at least he should have informed the plaintiff of the fact. Instead of this, he holds the barrels until after the rise, then loads them upon the second rise, and runs them down and sells them as his own.

The third and fourth specifications of error raise the same question, founded upon the answer of the court to the defendant's third point.

This point asked the court to say that the receipt of nine hundred and sixty-five vessels of oil, each containing forty gallons, satisfied the defendant's contract for one thousand barrels of oil. This depended upon the intention of the parties as to the kind of barrel meant. The court left it to the jury to say whether they meant a statute barrel of thirty-one and a half gallons or one holding more, for the oil-barrel in common use contains forty gallons as shown by the evidence. There was no error in this; the contract being by parol, its interpretation upon the evidence belonged to the jury. If the defendant desired a specific instruction that in the absence of a standard of measurement fixed by the contract, the statute standard of thirty-one and a half gallons to the barrel should govern, he should have asked it in such terms as would present the question fairly to the mind of the court. The answer of the court to his proposition in the form it was put was not unfair, and he cannot complain of it, therefore, in this court.

The judgment is affirmed.