## SHELBY P. AND GEORGE WELTNER *vs.* EDWARD RIGGS.

### January Term, 1869.

1. The act of Congress of June 30, 1864, requiring certain instruments, documents and papers to be duly stamped with a U. S. revenue stamp, are by said act only declared to be invalid which instruments, documents and papers were made, signed, issued, accepted or paid with intent to evade the provisions of the act.

2. The act of Congress of June 30th, 1864, requiring certain instruments, documents and papers to be stamped with a U. S. revenue stamp, and declaring such instruments, documents and papers invalid because they are not so stamped, does not in terms nor by necessary import determine whether the same shall be admissible as evidence in a State court, when not so stamped.

3. W. bought of R. apple and peach trees and grape roots to be delivered at a specified place "this fall." R. delivers them at the place on the 22nd day of November, and during severe freezing weather tied in bundles and unwrapped, and without previous notice of the time of delivery to W. HELD:

    That R. had no right to deliver and require W. to receive the trees and roots at that unseasonable period, and that even if the time had been seasonable, R. should have given W. reasonable notice of the time of delivery, and more especially as the articles were perishable, and much preparation for transplanting had to be made to make them profitable to W.

4. Where there is a verdict and judgment for the whole contract price of an article, while the action is only for not receiving it, the damage in such case, is only the difference between the value of the article delivered or tendered, at the place, and the contract price, and if the article then and there was worth the price stipulated, or nearly so, the plaintiff could not have sustained damage to the whole amount of the contract price; for until the article is accepted by the other party it remains the property of the vendor, and the verdict and judgment is erroneous.

---

\* He had been engaged as attorney in the cause below.

In May, 1865, Edward Riggs brought an action of trespass on the case in assumpsit in the circuit court of Monongalia county, against Shelby P. and George Weltner. The declaration was founded upon the following contract: "September 22d, 1864. Bought of Edward Riggs two thousand grape roots, one year old, at 16 dollars per hundred; ₁sweet apples 100; fall apples 100; winter apples 1,000; peach trees 2,000. The above trees at 16 dollars per hundred with a credit of three years with use; the same to be delivered this fall at Line ford; the above sale to be conditioned upon the said Riggs loaning the undersigned 2,000 dollars for the term of three years, with use, the same to be secured by a deed of trust on the farm of the undersigned, the interest to be paid annually.

(Signed)                 SHELBY P. WELTNER,
                             GEORGE WELTNER."

[U. S. stamp 5 cents.]
[U. S. stamp 5 cents.]

The declaration contained the usual common counts and a special count on the contract. At the August term, the office judgment and writ of inquiry were set aside, and the defendants filed a general demurrer to the declaration and to each count thereof, and pleaded the general issue with leave to file additional pleas within thirty days. The cause was continued until the February, term, 1867, when the demurrer filed by the defendants to the plaintiff's declaration was overruled, and the defendants offered to file a special plea in writing, to which the plaintiff objected because said plea was offered too late, and moved that said plea be rejected. The court sustained the objections and refused to permit the special plea to be filed, to which opinion of the court the defendants excepted.

On the trial of the cause the plaintiff offered to introduce as evidence the contract on which the suit was founded, to the introduction of which the defendants objected, on the ground that the same was not sufficiently stamped with a United States Internal Revenue stamp, as required by the act of Congress for such an instrument. But the court

was of opinion that the same was properly and sufficiently stamped, and overruled said objection, and allowed the contract to be read to the jury as evidence, to which opinion of the court the defendants also excepted. The evidence in the cause showed that the plaintiff who, under the contract, was required to deliver the trees and grape roots in the fall of 1864, to the defendants, at Line ford, in Monongalia county, did not deliver them until 'the 22d day of November; that they were brought on a steamboat to New Geneva, on the Monongahela river, and thence transported by wagon to the Line ford, on Cheat river, the place of delivery, tied in bundles without being wrapped with straw or moss, and unloaded on the bank of the river, and that the defendants had no notice of their delivery there until the day the trees were unloaded at the Line ford. That it was very cold and freezing when the trees arrived and for a day or two after, and that there was some ice formed during the time.

Before the jury left bar the defendants asked for the following instructions to be given by the court to the jury:

" The defendants, by their attorneys, ask the court to instruct the jury, that before they can find for the plaintiff in this cause, they must first find from the evidence that the said plaintiff did, in fact, deliver at the Line ford, in this county, for the defendants, at least 2,000 grape roots of one year's growth, 100 sweet apple, 100 fall apple, and 1,000 winter apple trees, and 2,000 peach trees, as respectively specified in the contract sued on; and that said trees and grape roots were so delivered in proper care and condition, and within the proper or ordinary season for planting that fall, to wit: the fall of 1864—in this locality, or latitude." And, No. 2:

" The defendants, by their attorneys, ask the court to instruct the jury, that before they can find a verdict for the plaintiff in this cause, they must find from the evidence that the plaintiff did, in fact, deliver at the Line ford, in this county, for the defendants, at least 2,000 grape roots, of one year's growth, 100 sweet apple, 100 fall apple,

and 1,000 winter apple trees, and 2,000 peach trees, as respectively specified in the contract sued on; and that said grape roots and trees were so delivered in the proper case and condition, and within the proper or ordinary season for fall delivery of such trees and roots in this locality or latitude."

But the court refused to give each and both of said instructions, or to allow the same to go to the jury. To which opinion of the court the defendants excepted.

The jury assessed the plaintiff's damages at 832 dollars.

The defendants moved the court to set aside the verdict and grant them a new trial on the ground that the verdict was contrary to the evidence. This motion was overruled and judgment rendered upon the verdict of the jury. To the opinion overruling the motion for a new trial, the defendants also excepted.

*Keck* for the plaintiffs in error.
*Brown & Richardson* for defendant in error.

BROWN, President. This was an action of assumpsit to recover damages for the refusal of the defendants to receive and pay for divers fruit trees and grape vines alleged to have been delivered or tendered by the plaintiff on contract.

I think the demurrer to the declaration was properly overruled, because the declaration states a case distinctly and formally.

The special plea was properly rejected, it being substantially the general issue which had been pleaded. To the objection of the written contract as void for the want of the proper stamp several answers may be given.

1st. It was stamped with two five cent revenue stamps, when the act of Congress of June 30th, 1864, (the contract being dated September 22nd, 1864,) required only one stamp of five cents.

2nd. The act only declared invalid those instruments, documents, and papers which were made, signed or issued, accepted or paid, without being duly stamped, with intent

to evade the provisions of the act, and there is no evidence of any such intent.

3rd. Without expressing any opinion as to the validity of the act or the competency of Congress to pass any act determining what evidence shall be admissible in the State courts, it is sufficient in the present case to say, that when Congress shall so declare in express terms, it will then be time enough to consider the subject. It would not be becoming to suppose Congress intended by implication or doubtful construction to assert such high prerogative save over the courts of the national government.

In this view of the case the act of Congress does not in terms nor by necessary import relate to the State courts; and this view of the case is fully sustained by the repeated decisions of the supreme court of Massachusetts, in the case of *Carpenter* vs. *Snelling*, 97 Mass., 452, and *Lynch* vs. *Morse*, *Ib*, 458. That court in the former case said, "this provision can have full operation and effect if construed as intended to apply to those courts only which have been established under the constitution of the United States, and by acts of Congress, over which the Federal legislature can legitimately exercise control, and to which they can properly prescribe rules regulating the course of justice and the mode of administering justice. We are not disposed to give a broader interpretation to the statute. We entertain grave doubts whether it is within the constitutional authority of Congress to enact rules regulating the competency of evidence on the trial of cases in the courts of the several States, which shall be obligatory upon them. We are not aware that the existence of such a power has ever been judicially sanctioned. There are numerous and weighty arguments against its existence. We cannot hold that there was an intention to exercise it where, as in the provision now under consideration, the language is fairly susceptible of a meaning which will give it full operation and effect within the recognized scope of the constitutional authority of Congress."

Another question to be determined is, whether the under-

taking to deliver apple trees, peach trees and grape vines in the county of Monongalia "*this fall*," will authorize and secure to the party the right to deliver till the last of the fall months without the consent of the other party, or whether it is limited to the last of the fall season suited to transplanting such trees, and usually adopted by nurserymen and the parties planting such trees in this latitude.

The object in view must weigh in giving construction to the language of the parties whose intention is supposed to be expressed in the terms used. Had the undertaking been to deliver such trees in the spring, no one would pretend it might be done until the last of the spring months, for that would defeat the object in view, and no prudent and sensible man would attempt to transplant trees to the last of May, when they would almost surely die. In such a case there can be no doubt that an undertaking to deliver in the spring would be held to mean that part of the spring properly suited and usually adopted for transplanting such trees. And the same rule must equally apply in the case of an undertaking, as in the present, to deliver in the fall.

The trees in question were delivered, or alleged to be delivered, on the 22nd day of November, and the weight of the testimony shows that to be later than the proper and usual fall season for such purpose.

The plaintiff then had no right to deliver and require the defendants to receive the articles in question at that unseasonable period, as well as unseasonable and inclement in fact.

But even if it had been in time, where no day was specified, and the plaintiff might at his option select within the limited period of the fall the day of delivery, he should give to the other party reasonable notice. And more especially would this be necessary in the case of perishable articles which must be provided for promptly or be lost, and where much preparation may be required for the purpose. But no such notice was given in time in this case.

But there is still another fatal objection to the verdict and judgment in this case, and that is, the recovery is for the whole

contract price of the articles, while the action is only for not receiving, and the damage in such case is only the difference between the value of the articles delivered or tendered at the place, and the contract price. And if the articles then and there were worth the price stipulated, or nearly so, the plaintiff could not have sustained damage to the whole amount of the contract price, for until the articles are accepted by the other party they remain the property of the vendor. And if they were worth nothing at the time and place of delivery, (as seems to be assumed by the verdict and judgment in this case) it is very strong, corroborative evidence in support of the proof that the season proper for delivery had passed and the value of the articles depreciated, if not wholly destroyed, by the conduct of the plaintiff.

For the foregoing reasons, I think that the objection to the admission to the paper of September 22nd, 1864, relating to the purchase of trees, &c., signed by the defendants, as evidence to the jury, was properly overruled.

And the defendant's two instructions, based on the assumption that the jury to find for the plaintiff must first find from the evidence that the plaintiff did, in fact, deliver, &c., were properly refused, because the plaintiff was only bound to prove the allegations of his declaration, and they were not that he *delivered*, but that he *tendered* and *offered to deliver* then and there, &c.

The verdict was not sustained by the evidence, and the court erred in overruling the motion to set it aside.

I think, therefore, that the judgment of the court below should be reversed with costs, the verdict set aside, and the cause remanded with instructions to grant the defendants a new trial if asked, and for further proceedings to be had therein, in conformity with the principles above indicated.

Maxwell, J., concurred.

JUDGMENT REVERSED.