Argued December 17, 1924, reversed and remanded January 27, rehearing denied March 17, 1925.

## BEN ROSENAU *v.* C. F. LANSING.

(232 Pac. 648; 234 Pac. 270.)

**Contracts—Writing Considered as Containing All Terms of Agreement—Court's Duty to Construe Contract.**

1. Where terms of an agreement have been reduced to writing, latter is considered as containing all those terms, and under Sections 136, 713, 715, Or. L., it becomes duty of court to ascertain and declare what is, in terms or in substance, contained therein.

**Sales—"Fall" Designating Time of Delivery Defined.**

2. The term "fall," when used to designate one of the four seasons of the year, as in contract to deliver fruit trees in the fall, embraces the three months commencing with first day of September and terminating with the last day of November.

---

1.   See 6 R. C. L. 835.
2.   Liability of vendor of trees, shrubs, plants or vines, see note in 49 L. R. A. (N. S.) 1151.

**Sales—Vendee Held Entitled to Recover for Breach by Vendor, Though not at Specified Place on Last Day for Delivery.**

3. Where vendor contracted to deliver certain prune trees in "fall," the date to be set for delivery by vendor, but vendor never set a day, gave no notice whatever, and never attempted to make a delivery, and vendee was ready, able, and willing to meet contract, vendee could recover for breach of contract, though not at designated place of delivery on last day of fall.

### ON PETITION FOR REHEARING.

**Contracts—In Construing Contracts, Courts Should Ascertain and Give Effect to Intent of Parties.**

4. Under Sections 715–717, Or. L., in construing contract, court should ascertain and give effect to intent of parties, if it can be collected from instrument and surrounding circumstances.

**Evidence—Courts Take Judicial Notice of Boundary of Cities Incorporated by Act of Legislative Assembly.**

5. Under Section 729, Or. L., courts will take judicial notice of boundary of cities incorporated by act of legislative assembly.

**Sales—Seller of Prune Trees for Delivery in "Fall" Held Entitled to Make Delivery Either as Early or as Late in Fall as Could be Done Without Injury to Trees Sold.**

6. Seller of nursery stock consisting of prune trees, under contract which provided for delivery in "fall," *held* entitled to set day for delivery either as early or as late in fall as delivery could be made without injury to health, thrift, and vigor of the young trees.

**Sales—Seller Entitled to Deliver Within Stated Period must Give Notice of Delivery Before Last Day of Period, or Such Date will be Day of Delivery Without Notice.**

7. Seller given option to deliver goods at any time within stated time must, to bind buyer, give notice of his election to deliver before last day of period, or such day will be date of delivery without notice.

See (1) 13 C. J. 597, 784.   (2) 25 C. J. 434.   (3) 35 Cyc. 183.

From Marion: PERCY R. KELLY, Judge.

Department 2.

This is an action for damages arising from the alleged failure of C. F. Lansing, defendant, to deliver 1,200 Italian prune trees to Ben Rosenau, plaintiff

3. See 23 R. C. L. 1415, 1417, 1421.
4. See 6 R. C. L. 835, 849.
5. See 15 R. C. L. 1083.
7. See 23 R. C. L. 1415.

herein, in accordance with his written contract for the sale and delivery thereof. Trial was had, and at the conclusion of the plaintiff's evidence the defendant moved the court for a nonsuit, which motion was granted upon the ground that plaintiff failed to show that he was at the place of delivery on the day of the alleged breach. From the judgment of the court based thereon, the plaintiff appeals.

REVERSED AND REMANDED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. W. H. Trindle* and *Messrs. Brown & Helgerson,* with an oral argument by *Mr. Trindle.*

For respondent there was a brief over the name of *Messrs. McNary, McNary & Keyes* and *Mr. E. M. Page,* with an oral argument by *Mr. John H. McNary.*

BROWN, J.—The contract involved herein, so far as is necessary to this opinion, reads:

"From Quaker Nursery, Salem, Oregon.
"Duplicate.
"Order for Trees and Plants
"No.                                    Date Apr. 4, 1919.
"I, Ben Rosenau, have this day bought of C. F. Lansing the following bill of Nursery Stock, at the price set opposite each respective article below, for the purpose of improving my property; to be delivered at the town of Sheridan, Or., in the fall of 1919, in good condition.
"I hereby agree to come or send for the goods purchased herein on the day set for delivery, at which time said goods are to be in good order, but after that date will be at my risk. Prices of any article omitted to be deducted at settlement. It is mutually agreed and fully understood by the contracting parties that the entire contract is written and printed herein, and that no countermand of this contract will

be accepted. It is further agreed that if any trees or plants should not prove true to name sold under, that the owner of the nursery shall not be liable for more than the price paid for trees in this contract.

| "No. | Article | Size or Age | Dollars | Cents |
|------|---------|-------------|---------|-------|
| "1200 | Prune Trees, Italian | 4 to 6 | $240 | 00 |
|      |         | "Total | $240 | 00 |

"For which I promise to pay to C. F. Lansing * * "

The foregoing fruit-tree agreement is a printed form supplied by the defendant, and properly signed.

1. The terms of an agreement having been reduced to writing, the law commands that that writing be considered as containing all those terms. Hence, it became the duty of the court "to ascertain and declare what is, in terms or in substance, contained therein." Or. L., §§ 136, 713, 715.

2. The parties disagree as to the meaning of the word "fall," as used in the contract.

"There are certain facts of such general notoriety that they are assumed to be already known to the court. Of those facts evidence need not be produced." Or. L., § 728.

The vendor contracted to deliver the trees in the fall of 1919. The term "fall," as used in the foregoing contract, was employed in its usual and popular sense, and in accordance with its true signification. Throughout the United States that term, when used to designate one of the four seasons of the year, embraces the three months commencing with the first day of September, and terminating with the last day of November: See Webster's New International Dictionary; Century Dictionary; Funk and Wagnall's New Standard Dictionary of the English Language.

113 Or.—41

The conflicting views of the parties, as disclosed by their learned discussion relative to the popular and astronomical definitions of the term "autumn," do not affect the result of this case in any way. There is testimony supporting the contention that the buyer was, at all times mentioned in the contract, not only ready, willing and able, but that he was anxious to perform his contract.

3. The contract was made in April, 1919. According to its terms, the vendor was to deliver the trees in the fall of that year, the day to be "set for delivery" by himself. He was the party clothed with the power to name the day. The vendee agreed "to come or send for the goods purchased herein on the day set for delivery." Lansing, the vendor, never set a day. He gave no notice whatever. Neither did he, at any time, attempt to make a delivery of the trees to Rosenau, the vendee.

There is testimony in the record tending to show that the plaintiff is the owner of, and resides upon, a farm situate three miles southeast of Sheridan, Oregon, designated in the contract as the place of delivery; that the defendant's nursery is situate near Salem, in Marion County; that the plaintiff, as stated in the contract, was desirous of improving his farm by planting thereon an orchard consisting of 1,200 prune trees; that the trees bargained for were to be from four to six feet in height, and that the price to be paid therefor was $240, or at the rate of 20 cents per tree. The record further shows that the plaintiff, due to defendant's failure to deliver the trees in fulfillment of his contract, in order to carry out his desire to improve his farm, was compelled to go elsewhere and purchase 1,200 prune trees at about 50 cents per tree for the kind and

quality of trees described in the contract. Concerning his ability to meet his contract, there is testimony to the effect that the plaintiff's farm is of the value of $10,000, with an encumbrance of $2,500, and that during the whole of the period of delivery named in the contract he had in a bank at Sheridan between five hundred and six hundred dollars.

The record shows that the plaintiff went to Sheridan every Saturday, and at other times; but, because he could not testify that he was at Sheridan on the last day of the fall of the year named in the contract, a nonsuit was granted.

The cases discussed below are illustrative of the principle that governs the decision of this cause.

The case of *Weltner* v. *Riggs*, 3 W. Va. 445, arises from a contract to sell and deliver fruit trees. The vendee "bought of Edward Riggs two thousand grape roots, one year old, at sixteen dollars per hundred," together with three thousand two hundred fruit trees, "the same to be delivered this fall at Lineford," in Monongahela County, West Virginia. In that case, as in this, the vendor had the option to deliver the fruit trees at any suitable time in the fall. The Supreme Court of that state held that it was necessary for the vendor to notify the vendee of the day of delivery; and, in speaking of the delivery and notice, it was said:

"But even if it had been in time, where no day was specified, and the plaintiff might at his option select within the limited period of the fall the day of delivery, he should give to the other party reasonable notice. And more especially would this be necessary in the case of perishable articles which must be provided for promptly or be lost, and where much preparation may be required for the purpose. But no such notice was given in time in this case."

This holding is cited in 49 L. R. A. (N. S.) 1151, in a valuable note on the subject of liability of vendors of trees, plants or vines.

Another case in point is that of *Kirkpatrick* v. *Alexander,* 44 Ind. 595, which involved the delivery of hogs. In that case, the seller had agreed to deliver the hogs at some time during the first half of August, and the court held that it was necessary that the seller give notice to the purchaser of the time of delivery.

*McNary* v. *Bishop,* 8 Dana (Ky.), 150, involved a contract wherein the vendors agreed to sell and deliver, between the 15th and 20th of October, 600 fat hogs of a specified description, to be delivered in such pens as the vendor should select within ten miles of Elizaville. The purchasers resided some distance from Elizaville and, until the expiration of the time set, had never received notice that the sellers would comply with their agreement, or that they had selected a place for delivery. In a suit against the vendees, the court held that it was necessary for the vendors to aver and prove that they had selected a place within ten miles of Elizaville for delivery, that they had fixed a day or days within the prescribed period for such delivery, and had notified the defendants.

The case of *Spooner* v. *Baxter,* 16 Pick. (Mass.) 409, grew out of a contract for the purchase of a vessel then being constructed in Maine. The agreement provided that the vessel should "be completed and delivered, as soon as possible, at Frankfort Village, or Belfast, either of these places, at the option of the purchaser." The court, in discussing the case, said:

"The general rule is that, where the knowledge of a material fact rests more in the mind of one than of another, he who has the best means of

knowledge is to give notice to the other. * * The defendant was to build the vessel for the plaintiff as soon as possible. * * He would have more knowledge when she was finished and ready for sea than the purchaser would have, unless the purchaser employed a special agent to watch the work and to give notice of the finishing. But such a course on the part of the purchaser would not be reasonably expected. Baxter was to take the first step. He was to build and rig the ship, and offer to deliver her according to the contract, ready for sea, before he could compel the plaintiff to pay for her. He was bound to give notice of those facts, and to offer to deliver her at Frankfort Village or at Belfast 'at the plaintiff's option.' "

The doctrine announced in *Spooner* v. *Baxter, supra,* is referred to with approval in the recent case of *Orr* v. *Keith,* 245 Mass. 35 (139 N. E. 508).

The case of *Cullum* v. *Wagstaff,* 48 Pa. 300, arose from the breach of a contract to sell and deliver a large quantity of oil. It was there held to be the duty of the defendant, when prepared to deliver the oil, to notify the plaintiff of his readiness to execute his contract.

See 35 Cyc. 168; 24 Am. & Eng. Ency of Law (2 ed.), 1073, 1074. In 2 Williston on Sales (2 ed.), Section 457, it is said:

"In order for either buyer or seller to put the other party in default, it is often necessary that notice of some fact be given. The necessity is sometimes due to an express condition in the contract. In other cases the condition, though not expressed in words, is necessarily involved in the agreement. What may be called a condition implied in fact in such a case qualifies the promise. * * So in all cases where the buyer has by the terms of the contract an option as to the time or place of performance due from the seller, it is a condition qualifying the seller's obligation that the buyer shall have given

shipping directions or other requisite notice of his choice. Conversely, if the buyer is to take goods when the seller has manufactured them or made them ready for delivery, the buyer's obligation to take the goods is qualified by the condition that notice of the completion of the goods be given. * * The rule has thus been stated: 'Where a party stipulates to do a certain thing in a certain specific event which may become known to him, or with which he can make himself acquainted, he is not entitled to any notice, unless he stipulates for it; but when it is to do a thing which lies within the peculiar knowledge of the opposite party, then notice ought to be given him.'

"Generally, where the buyer or seller is entitled to notice before performing, the notice is not simply a condition qualifying his obligation; it is also a legal duty of the other party to give such notice within a reasonable time. Accordingly, if the notice is not given, not only is the party who should receive it excused from performing, but he has a right of action against the party who should have given it."

See, also, *Krebs Hop Co.* v. *Livesley,* 55 Or. 227 (104 Pac. 3).

This is not a case of delay in the delivery of the fruit trees, nor does the record present a case of waiver of the terms of the contract by plaintiff. The contract, as pleaded, and the testimony, if true, present a clear case of breach of contract by the defendant, resulting from his nondelivery of the trees during the time specified in the contract. There is testimony tending to show that there was a marked advance in the price of prune trees between April 4, 1919, the date of the execution of the contract, and the passing of daylight on November 30, 1919, the time of the breach thereof.

We find in the record some competent evidence in support of all the material allegations of the com-

plaint. It follows that the court erred in directing a nonsuit.

This case is reversed and remanded.

REVERSED AND REMANDED.

McBRIDE, C. J., and BEAN and COSHOW, JJ., concur.

---

Rehearing denied March 17, 1925.

ON PETITION FOR REHEARING.

(234 Pac. 270.)

For the petition, *Messrs. McNary, McNary & Keyes,* and *Mr. E. M. Page.*

*Contra, Messrs. Brown & Helgerson* and *Mr. W. H. Trindle.*

BROWN, J.—For a full statement of the facts in this case, and a copy of the contract for the sale and delivery of nursery stock, see *Rosenau* v. *Lansing* (Or.), 232 Pac. 648.

4. A familiar rule of law is stated thus:

"The cardinal principle in the construction of all contracts, including contracts of sale, is to ascertain the intention of the parties, and give effect thereto, if it can be collected from the instrument and the circumstances without the violation of some settled legal principle. So the courts in the construction of contracts of sale for the purpose of arriving at the intention of the parties may look to the language employed, the subject matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and, in that view, they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of

the meaning of the words and of the correct application of the language to the things described.'' 23 R. C. L., § 147, Sales. See, also, Or. L., §§ 715–717.

5. This case involves the construction of an agreement for the sale and delivery of nursery stock to be planted on plaintiff's farm near Sheridan, Oregon. The City of Sheridan was incorporated by the Legislative Assembly of the State of Oregon, and the court will take judicial notice of its boundaries: Or. L., § 729. Under the terms of the contract, the nurseryman agreed to deliver to plaintiff, in the fall of the year, 1,200 prune trees, in good condition. In order to meet the conditions set forth in the contract, it was essential that the trees, when delivered, be sound, healthy, vigorous, and in fit condition, when properly transplanted, to germinate and grow: *Kitchin* v. *Oregon Nursery Co.*, 65 Or. 20 (130 Pac. 408, 1133, 132 Pac. 956); *Kelly* v. *Lum*, 75 Wash. 135 (134 Pac. 819, 49 L. R. A. (N. S.) 1151, and note).

6. It must be borne in mind that the agreement under consideration involves the sale and delivery of prune trees intended, and fit for the purpose of planting. It has been decided that where a contract relates to the sale and delivery of perishable articles, such as nursery stock, in the ''fall,'' the vendor is required to make delivery in that part of the fall suitable for transplanting: 23 R. C. L., § 191, Sales.

This contract is in writing and should be construed as a whole, giving effect to every part thereof. It provides, among other things:

''That the entire contract is written and printed herein.''

It is ''written and printed'' in the contract that the plaintiff agrees ''to come or send for the goods purchased herein on the day set for delivery, at which

time said goods are to be in good order.'' The seller promised to set the day for delivery at Sheridan. It is written in the contract that the nursery stock is ''to be delivered at the Town of Sheridan, in the fall of 1919, in good condition.'' The particular place in Sheridan for delivery is not named. Both the time and place for delivery in Sheridan were to be fixed by the seller. Under the provisions of the writing, the seller could have set a day for delivery of the trees at Sheridan as early in the ''fall'' of the year specified in the writing as delivery could have been made without injury to the health, thrift, and vigor of the young prune trees, and not earlier. He could likewise have delivered the perishable prune trees as late in the fall as he chose, provided delivery and receipt thereof might have been had without injury to them. The early days of September may, or may not, have been a suitable time for delivering the trees. Again, the last day of November may, or may not, have been a fit time to deliver fruit trees intended for transplanting: *Weltner* v. *Riggs,* 3 W. Va. 445. The period of time for delivery named in the contract embraced the entire ''fall'' of that year. But the contract also required that the trees be delivered in ''good condition.'' These provisions should be read together. It was for the mutual benefit of the parties to the contract that the seller was impliedly named to fix the time for delivery. Young trees are tender. Climatic conditions affect them. From the defendant's pleadings we learn that winter began with unusually cold weather. He says the trees were frozen; but the date on which he alleges that they were frozen was subsequent to the time designated in the contract for delivery.

7. In the preparation of the original opinion we had, and now have, in mind a general rule in the law of sales relating to the time of delivery, which is stated as follows:

"If the seller is given the option of delivering the goods at any time within a stated period he must, to bind the buyer, give notice of his election to deliver before the last day of the period or such last day will be the day of delivery, in which case no notice is necessary." 35 Cyc. 182, 183.

But, in the cause at issue, the subject matter of the contract is the sale and delivery of trees of tender growth and age, and the nurseryman contracted to give notice to the vendee.

"The parties of course could have made a contract requiring the giving of a notice at all events." *Livesley* v. *Strauss,* 104 Or. 356 (206 Pac. 850, 207 Pac. 1095).

This contract plainly provides that the vendee was to "come or send for the goods purchased herein on the day set for delivery" by the seller of the nursery stock. It further provides that on the day the trees were to be delivered at Sheridan they "are to be in good order," but after that date the vendees must assume the responsibility as to the condition thereof. The perishable nature of the young trees runs through the contract.

Considering the situation of the parties at the time of the execution of the contract: The plaintiff was a responsible farmer, residing near the City of Sheridan, Oregon. The defendant was a nurseryman engaged in growing fruit trees near Salem, Oregon, about thirty miles distant from Sheridan. The nurseryman was represented by an agent who was soliciting orders. The agent called upon the farmer, who was desirous of planting a prune orchard. The

farmer was eager to buy prune trees. The nursery-
man was equally eager to sell. The farmer agreed
to purchase 1,200 prune trees. The agent produced
a form of nursery contract provided by the defendant.
The form was filled out by the agent and signed by
the farmer. The contract is silent as to the manner
in which the nurseryman would transport the fruit-
trees to Sheridan. He had the right to send them
by express and notify the purchaser to come to the
express office in Sheridan and get the trees. Also,
he had the right under the contract to send the trees
by freight and notify the plaintiff where to come.
Or, he could have delivered them by motor-truck
and required Rosenau to meet him at any specified
place in the City of Sheridan for the purpose of
receiving them. See the instructive opinion by Mr.
Justice BURNETT in *Harrison* v. *Beals* (Or.), 222 Pac.
728, involving place of payment. The defendant
failed to give any notice, and neglected to ship the
trees from Salem to Sheridan.

The case of *Bonewell et al.* v. *Jacobson*, 130 Iowa,
170 (106 N. W. 614, 5 L. R. A. (N. S.) 436), is much
in point. In that case, Mr. Chief Justice McCLAIN, in
rendering the opinion of the court, said:

"It was expressly stipulated that the trees were
'to be delivered by said B. F. Bonewell & Company
in good order at Story City in the spring of 1902 on
a day to be fixed by said B. F. Bonewell & Company
by notice given to said party of the second part';
and it was further recited that 'the party of the
second part agrees to receive said goods on the day
and at the place named above, and to pay for the
same at Des Moines, Iowa, upon such delivery.'
There was no evidence, so far as the record shows,
that defendant ever received notice of the time and
place where plaintiffs proposed to deliver the trees,

nor that plaintiffs ever attempted to make any such delivery.''

The court held that in view of the circumstances there could be no recovery of the purchase price of the trees under that contract.

During the period of time covered by the record in this cause the price of prune trees advanced greatly. The testimony discloses a buyer who was at all times ready, able, willing, and eager to perform his contract. Upon the other hand, it evidences a nurseryman who entered into a contract for the sale and delivery of fruit trees but failed to perform its conditions.

The petition for rehearing is denied.

REHEARING DENIED.

McBRIDE, C. J., and BEAN and COSHOW, JJ., concur.