**UNITED STATES NATIONAL BANK OF PORTLAND, Executor of the Estate of Hanford F. Reed, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 489-59.

United States District Court
D. Oregon.
Sept. 30, 1960.

Carl E. Davidson, Charles P. Duffy, Walden Stout, Portland, Or., for plaintiff.

C. E. Luckey, U. S. Atty., Edward J. Georgeff, Asst. U. S. Atty., Portland, Or., for defendant.

KILKENNY, District Judge.

Plaintiff instituted this action to recover estate taxes assessed against and collected from the plaintiff by the defendant. Also involved is a counterclaim by defendant for the recovery of estate taxes assessed but not collected.

Hanford F. Reed, a resident of Union County, Oregon, died testate on November 13, 1956, survived by his wife, Ruby J. Reed. In November of that year the plaintiff was appointed executor of decedent's estate by the County Court of said County. On February 17, 1953, decedent, as trustor, entered into an irrevocable written trust agreement with plaintiff, as trustee, and at that time paid the trustee $25,000 to be held pursuant to the terms and conditions of said trust. Trustor retained no power to alter, amend, revoke or terminate said trust. The trust agreement provided, inter alia, that the income from the trust fund should be accumulated by the trustee and added to the principal until February 17, 1959. On that date decedent was to receive $100 per month from the net income of the trust, or from the principal if necessary, for his life, and a similar sum of $100 each month was to be paid by said trustee to the wife of the decedent during her lifetime.[1]

---

1. Article VIII of the trust agreement reads in part:
   "The trustee shall pay or apply from the net income and so much of the principal trust estate as shall be necessary, the sum of $100.00 each month to or for the benefit of the trustor *and a similar sum of $100.00 each month to or for the*

After the death of the survivor, the trust would terminate and the trustee was directed to distribute the residue of the trust estate and any accumulated income among the then surviving children of the trustor, in equal shares. The trustee was authorized, at its sole discretion, to pay or apply such portions of the net income of the trust estate to or for the benefit of the trustor and his wife as the trustee might deem necessary in the event of illness or other emergency during the lifetime of both, and to the survivor, the aggregate amount of funds so applied not to exceed the sum of $5,000 during the entire period. A copy of the trust agreement is one of the exhibits introduced in evidence.

At the time of the death of the decedent the assets of the trust had increased in value to $48,866.22 and at that time the fund was producing an annual income of approximately $1,550. Decedent died before the monthly income payments were due to him or his wife. Decedent was born October 2, 1882.

On March 20, 1957, the probate court for Union County, pursuant to the provisions of ORS 116.015 [2] made an order directing plaintiff to pay to the surviving widow a widow's allowance in the sum of $12,000, which sum was paid to her on March 22, 1957. The order recited, inter alia, that the appraised value of the estate was $878,666.95, and was ample and sufficient to satisfy all debts and liabilities, pay the expenses of administration and in addition pay said allowance, the said allowance to be paid from the corpus of the estate. A copy of the order is in evidence. The executor duly filed a federal estate tax return for said estate with the District Director of Internal Revenue for Oregon and on that date paid the sum of $331,-941.87, the net estate tax payable as shown by the return. In said return the executor did not include any part of the value of the said inter vivos trust established by decedent and claimed a deduction of $12,000 for the said widow's allowance paid to the said surviving spouse.

Subsequently, the District Director notified the executor of an estate tax deficiency in the amount of $16,408.05, which was determined by reason of the inclusion in the taxable estate of an alleged retained life interest by the decedent in said inter vivos trust and by reason of the claim by the Director that the widow's allowance for $12,000 did not qualify as a marital deduction. Plaintiff paid the alleged deficiency and interest and then instituted this action to recover same.

On April 15, 1960, the estate was notified by the District Director of an additional estate tax deficiency in the sum of $2,804.81, determined by reason of the inclusion in the taxable estate of the amount of $48,866.22, rather than $39,-933.71 as the value of the decedent's retained life interest in said inter vivos trust and/or by reason of the inclusion in the taxable estate of the value of the trust property which was transferred in trust during his lifetime and by which trust instrument decedent retained a reversionary interest, the value of which exceeds 5% of the value of such property. This forms the basis of defendant's counter-claim.

### Issues

I. Does the widow's allowance under the Oregon statute constitute such a property interest as will qualify as a

---

*benefit of Ruby J. Reed, wife of the trustor,* * * *." (Emphasis added.)

2. Oregon Revised Statutes.
"If the exempt property described in ORS 116.010 is insufficient for the support of the widow and minor children, according to their circumstances and condition in life, for one year after the filing of the inventory, the court or judge thereof may order that the executor or administrator pay to such widow, if any, and if not, then to the guardian of such minor children, an amount sufficient for that purpose; but such order shall not be made unless it appears probable that the estate is sufficient to satisfy all the debts and liabilities of the deceased and pay the expenses of administration in addition to the payment of such amount."

marital deduction under the provisions of 26 U.S.C.A. § 2056?

II. What portion if any, of the value of the trust should be included in the gross value of the estate?

██ I. In order to decide the first issue, it is necessary to construe ORS 116.015. This section and ORS 116.010, dealing with the exempt property of the estate, were part of the original civil code of the state of Oregon enacted in 1862. Deedy & Lane Code, §§ 1094, 1095, 1096. All statutes in pari materia should be construed together. United States v. Phez Co., 9 Cir., 1928, 28 F.2d 106; Noble v. Noble, 164 Or. 538, 103 P. 2d 293. This is particularly true in the construction of exemption statutes such as a probate homestead. Benedict v. Lee, 198 Or. 378, 256 P.2d 507. Laws enacted by the same legislative session must be construed together. Winslow v. Fleischner, 112 Or. 23, 228 P. 101, 34 A.L.R. 826; Daly v. Horsefly Irrigation District, 143 Or. 441, 21 P.2d 787. ORS 116.010 directs the judge of a probate court to set aside for the widow all property of the estate exempt from execution.[3] It is significant that the widow is entitled to her rights under ORS 116.015 only if the exempt property, including the homestead, is insufficient for her support.

██ Since the Oregon legislature has made the right to support of the widow dependent on the insufficiency of the homestead and other exempt property, for support, it would be logical that we look to the Oregon Supreme Court cases, construing the homestead statutes,[4] in arriving at a conclusion to our problem. The right to a homestead exists solely by reason of statute. Hansen v. Jones, 57 Or. 416, 109 P. 868. The Oregon statute on the selection of a homestead is not self-executing. Jenning v. Jenning, 197 Or. 366, 253 P.2d 276. The probate homestead is premised on the homestead exempt from execution. ORS 116.010. The homestead exemption is not an estate, but is a personal privilege which must be claimed in order to be effective. Moore v. Schermerhorn, 210 Or. 23, 307 P.2d 483, 308 P. 2d 180, 65 A.L.R.2d 715; Crim v. Thompson, 112 Or. 399, 410, 229 P. 916; Varner v. Portland Trust Bank, 210 Or. 658, 662, 313 P.2d 444. The widow's claim for support is analogous to her right of dower. The death of the widow prior to the assignment of dower terminates that right. Dahlhammer & Roelfs v. Schneider, 197 Or. 478, 252 P.2d 807.

██ It seems rather clear that the widow in the instant case would not be entitled to support without first showing, (1) that the exempt property, including the homestead, was insufficient for her support, and (2) that the estate was sufficiently solvent to satisfy all of the debts and liabilities of the decedent and to pay the expenses of administration. In other words, the claim for support would be much weaker, under the Oregon statutes, than the claim for a homestead.

██ In Re Booth's Estate (Booth v. First National Bank), Or., 349 P.2d 840, 847, decided March 2, 1960, the Oregon Supreme Court held that the widow's al-

3. "Upon the filing of the inventory the court or judge thereof *shall* make an order setting apart for the widow, widower or minor children of the deceased, if any, all the property of the estate exempt from execution, according to exemption laws in effect as of date of death of deceased. The property thus set apart is the property of such widow or widower to be used or expended by her or him in the maintenance of herself or himself and minor children, if any. If there is no widow or widower, it is the property of the minor child; or if more than one child, then of the minor children in equal shares, to be used or expended in the nurture and education of such child or children by the guardian thereof, as the law directs." (Emphasis added.)

4. ORS 23.240; 23.250; 23.270.

lowance should be determined upon the basis of the following considerations:

"(a) The circumstances and condition in life of the widow, including her health;

"(b) Her necessary expenditures for her support;

"(c) The income derived by her from property owned by her before the death of her husband;

"(d) The income derived by her from property acquired by her upon or as a result of the death of her husband;

"(e) Other income received by her; and

"(f) The total assets of the estate."

The Court in that case held that one of the principal considerations was the income which the widow might receive from her separate property, rather than the value of her separate property. The opinion clearly indicates that if said income was sufficient for the support of the widow, then a widow's allowance from the husband's estate would be improper. Likewise, the Booth case holds that the amount of the allowance is within the sound discretion of the trial court. Under the plain language of the statute, as construed by the Oregon Supreme Court, the payment of a widow's allowance is contingent on many factors and is not a vested property right at the time of death.

The plaintiff cites Iltz v. Krieger, 104 Or. 59, 202 P. 409, 206 P. 550; In re Potter's Estate, 154 Or. 167, 59 P.2d 253; Brown v. Miles, 193 Or. 466, 238 P.2d 761; and Jenning v. Jenning, 197 Or. 366, 253 P.2d 276, as supporting its theory that the widow received a vested interest in the property of the estate on the death of the decedent. These cases all dealt with the homestead right of the surviving widow in the husband's estate and all of these cases were decided before Varner v. Portland Trust Bank, supra. None of these cases, when read in the light of the facts involved, lend support to the plaintiff's theory.

Varner v. Portland Trust Bank, supra, was not cited by either the plaintiff or the defendant. In that case a widower died without making application to have the family abode set apart as homestead. His child by a former marriage and the administrator of his estate joined in a proceeding claiming that the homestead vested in the widower at the date of his wife's death. The Oregon court held that the homestead statute created only a personal privilege which must be claimed to be effective. Since the right of the widow's support is dependent on the insufficiency of the probate homestead exemption, it is quite clear that the right to the widow's support is a mere privilege and does not create a property right which would pass to her heirs unless she exercised the privilege and had the property set aside during her lifetime.

Such being the Oregon law on the widow's rights under the statute, we must turn to the Internal Revenue Act, 26 U.S.C.A. § 2056.[5]

---

5. "(a) Allowance of marital deduction.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

\* \* \* \* \*

"(d) Disclaimers.—

"(1) By surviving spouse.—If under this section an interest would, in the absence of a disclaimer by the surviving spouse, be considered as passing from the decedent to such spouse, and if a disclaimer of such interest is made by such spouse, then such interest shall, for the purposes of this section, be considered as passing to the person or persons entitled to receive such interest as a result of the disclaimer.

\* \* \* \* \*

"(e) Definition.—For purposes of this section, an interest in property shall be

■ The definition of words used in federal tax statutes is governed by federal law. Lyeth v. Hoey, 1938, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119; Burnet v. Harmel, 1932, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199.

■ Cunha v. Commissioner, 9 Cir., 1960, 279 F.2d 292, is in point. In that case the taxpayer argued that the *right* to a widow's allowance, under the California statute for a widow's support, was "property" referred to in 26 U.S. C.A. § 2056(e) and that no person other than the widow had an interest in such "property" or would at any time possess or enjoy any part of such "property." There, as here, the court was confronted with the question of whether the right to a widow's allowance is itself "property" or merely an "interest" in the property; namely, the estate assets. Judge Orr, after painstakingly reviewing the Congressional background of this legislation, held that the right to the allowance did not accrue until after the Court order granting it and that the actual amount of the allowance, its duration and subsequent modification was in the wide discretion of the California probate court. He called attention to the California decisions, Estate of Blair, 42 Cal.2d 728, 269 P.2d 612, 614, and Estate of Hamilton, 66 Cal. 576, 6 P. 493, holding that the right to receive payments under an order for support terminated on the death or remarriage of the widow and that the right was personal and could not be assigned. Judge Orr then concludes that the right to receive a widow's allowance is not "property"

as that term appears in said section and that such a right is a terminable interest in the estate assets and not such property as would be considered a marital deduction under the applicable law. Cunha makes it very clear that the "property" right which qualifies as a marital deduction must be characterized according to the attributes it possesses at the instant of the decedent's death. Under the Oregon statute, the right of the widow to the allowance is a mere personal privilege, to be exercised or not at her whim or discretion, limited by the conditions precedent set forth in the companion statutes. I am bound by the decision in Cunha.

The cases relied on by plaintiff, Estate of Proctor D. Rensenhouse, 1958, 31 T.C. 818; King v. Wiseman, D.C.W.D.Okl. 1956, 147 F.Supp. 156; Molner v. United States, D.C.N.D.Ill.1959, 175 F.Supp. 271, are reconciled by Cunha. It would appear that the state law in each of the states in which those cases arose held that the widow's support statute created a vested interest which she would receive in any event. In other words, the property right was created in the assets of the estate and the courts of those states had so held. The Oklahoma statute has no similarity to the Oregon statute and obviously creates a vested property right in the widow. In Fick v. Armstrong, 136 Ill.App. 26, the Illinois Supreme Court held that the widow's claim for support under the Illinois statute was a vested right in the property of the estate and that her claim to this property could be asserted by the ad-

considered as passing from the decedent to any person if and only if—

"(1) such interest is bequeathed or devised to such person by the decedent;

"(2) such interest is inherited by such person from the decedent;

"(3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent;

"(4) such interest has been transferred to such person by the decedent at any time;

"(5) such interest was, at the time of the decedent's death, held by such person

and the decedent (or by them and any other person) in joint ownership with right of survivorship;

"(6) the decedent had a power (either alone or in conjunction with any person) to appoint such interest and if he appoints or has appointed such interest to such person, or if such person takes such interest in default on the release or non-exercise of such power; or

"(7) such interest consists of proceeds of insurance on the life of the decedent receivable by such person. * * *."

ministrator of her estate for that estate's benefit. Likewise, the Michigan statute involved in the Rensenhouse case is readily distinguishable from the Oregon statute. The direction for the widow's allowance in the Michigan statute is *mandatory* and is not dependent upon the solvency of the estate, nor the sufficiency of the homestead and exempt property to support the widow. The Supreme Court of Michigan, in construing its support statute, held that the widow's allowance was not lost by reason of her subsequent death or remarriage. Bacon v. Perkins, 100 Mich. 183, 58 N.W. 835; Isabell v. Black, 259 Mich. 100, 242 N.W. 853. The Oregon statute creates no such property interest in the widow. The reasoning in Shafer v. United States, D.C.S.D.Iowa 1960, decided April 25, is directly opposed to the reasoning in Cunha and cannot be reconciled with that decision.

▮▮▮▮ II. The defendant takes the position that the entire value of the inter vivos trust at the time of death, viz. $48,866.22, should be included in the gross value of decedent's estate by reason of his retained life interest in said trust. 26 U.S.C. §§ 2036, 2037. There is no question that decedent retained the right to receive $100 per month for his lifetime. It is argued that the provisions of the trust agreement gave decedent's wife an equal right to participate in the income from the trust and that income of $200 per month would require a trust corpus far in excess of that with which we are concerned. The law of the state where the contract is made governs matters bearing on its construction. Cox v. United States, 6 Pet. 172, 31 U.S. 172, 8 L.Ed. 359; Schram v. Smith, 9 Cir., 1938, 97 F.2d 662; Pritchard v. Norton, 106 U.S. 124, 1 S.Ct. 102, 27 L.Ed. 104. The intention of the parties to a contract is controlling in its interpretation. ORS 42.230; Rosenau v. Lansing, 113 Or. 638, 232 P. 648, 234 P. 270; Champion v. Hammer, 178 Or. 595, 169 P.2d 119. The particular language of the trust agreement with which we are concerned is referred to in Footnote 1. If the parties had intended the wife to have an equal right with decedent to the income of the trust, it would have been a simple matter to direct that $200 per month be paid to decedent and his wife during their lifetime and that $100 per month be paid to the survivor. In these times of exceptionally high estate taxes, the courts must recognize that persons of considerable means, such as decedent in this case, seek to minimize the impact of these taxes by planning such a disposition of their estates. Of course, there is nothing wrong with such planning. In this case we must assume that it was decedent's intention to minimize the estate tax impact. If the government's position was adopted, the decedent would have failed in his efforts and his planning would have been futile. Decedent was presumed to know the law. Certainly he would not have intended to nullify his plan by placing his wife's rights to income on the same plane with his own. The fact that his wife's right to income from the trust is entirely separate from his own indicates a definite intention to prefer his own right. I hold that a proper construction of the language of the trust agreement requires a holding that the decedent's right to $100 per month of the income was superior to that of his wife. In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, is important. ORS 42.220; Stubbs v. Abel, 114 Or. 610, 233 P. 852, 236 P. 505; Haynes v. Douglas Fir Exploitation, 161 Or. 538, 90 P.2d 207, 761; Commodity Credit Corporation v. Rosenberg Bros. & Co., 9 Cir., 1957, 243 F.2d 504, certiorari denied 355 U.S. 837, 78 S.Ct. 62, 2 L.Ed.2d 48. In arriving at this conclusion, I hold that the payments under the trust agreement would have commenced on February 17, 1959, the agreed date in the pre-trial order. Defendant attempts to argue that this date should be February 17, 1958. The trust agreement is somewhat ambiguous. However, the defendant should be bound by the agreed statement in the

340

pre-trial order. Rule 16, F.R.Civ.P., 28 U.S.C.A.; Curto v. International Longshoremen's, etc., D.C.Or.1952, 107 F. Supp. 805, affirmed 9 Cir., 226 F.2d 875. By reason of my holding on the above issues, no part of said inter vivos trust, the income from which was not received by the decedent, should be included in the gross estate. In re Uhl's Estate, 7 Cir., 1957, 241 F.2d 867. The amount includable in the decedent's estate would be the amount which is required to yield the monthly payments of $100 per month to commence on February 17, 1959, such value to be computed by the use of the proper actuarial and mathematical tables compiled on a basic 3½% return.[6]

■ The alternative defense of the defendant which is based on 26 U.S.C. § 2037 is without merit. The decedent retained no reversionary interest in the property. Plaintiff's contention that the trust agreement should be treated as an annuity contract under the holding in Becklenberg's Estate v. Commissioner, 7 Cir., 1959, 273 F.2d 297, is entirely unsound. There is nothing in this agreement to indicate an intention on the part of the trustee to pay the $100 per month, irrespective of whether the principal or interest would support the payment. The trustee was only bound to pay so long as there was principal and income available.

■ The defendant, as an alternative, and in case the entire corpus of the trust should not be included in the gross value of the estate, argues that an additional $5,000 should be added to the gross estate for taxation purposes by reason of the following language of the trust agreement:

"Notwithstanding the foregoing provisions, the trustee may, at its sole discretion pay or apply such portions of the net income of the trust estate or principal thereof, to or for the benefit of the trustor and his wife, or either of them, as the trustee shall deem necessary in the event of illness or other emergency affecting the trustor or his wife, during the lifetime of both and of the survivor; but the aggregate amount of funds so applied shall not exceed the sum of $5,000.00 during the entire period."

The defendant's position is partially supported by the opinion of Justice Learned Hand in Stix v. Commissioner, 2 Cir., 1945, 152 F.2d 562. We quote from page 563:

"* * * Nevertheless, we agree that no language, however strong, will entirely remove any power held in trust from the reach of a court of equity. After allowance has been made for every possible factor which could rationally enter into the trustee's decision, if it appears that he has utterly disregarded the interests of the beneficiary, the court will intervene. Indeed, were that not true, the power would not be held in trust at all; the language would be no more than a precatory admonition."

To the same effect see, Blunt v. Kelly, 3 Cir., 1942, 131 F.2d 632; Toeller's Estate v. Commissioner, 7 Cir., 1948, 165 F.2d 665. The Oregon law on the subject is in line with the decision of Justice Hand in the Stix case. Crow v. Strome, 214 Or. 158, 327 P.2d 414.

However, the total $5,000 should not be added to the gross estate. Only that percentage of such sum as would equal the percentage of the non-taxable portion of the corpus of the trust should be added. Counsel should compute the percentage of the $5,000 to be included and submit the same to the Court with the other computations as herein indicated. If a dispute arises, a supplemental hearing will be held.

Findings shall be prepared, served and presented.

6. See comment on emergency clause.